*1210 OPINION.
AeuNdell :
The petitioner is claiming the right to deduct from gross income each taxable year as compensation for services rendered, the amount of profits credited on its books in favor of its managers, on the ground that upon determining the profits at the end of each *1211 year, the amounts payable to its managers under the contracts of employment became fixed liabilities of the corporation for the current year.
Since the petitioner kept its books and filed its returns for the taxable years on the accrual basis, to be entitled to the claimed deductions it must show that the liabilities were incurred in the respective years. William J. Ostheimer, 1 B. T. A. 18. The liability to pay must be fixed and definite and not subject to indeterminable future events. S. Naitove & Co., 8 B. T. A. 589; affd., 32 Fed. (2d) 949; certiorari denied Oct. 21, 1929; and Kaufmann Department Stores, Inc., 11 B. T. A. 949, affd., 34 Fed. (2d) 257.
In each of the contracts of employment, Jones, Boberts, and Thomas, as compensation for their services in actively managing the petitioner’s business, were to receive a stipulated annual salary, plus 80 per cent of the profits, computed as provided for in the agreements, such profits to be credited to the accounts of the managers until such time as the petitioner no longer required borrowed capital to operate its business. When the financial condition of the petitioner became such that it did not have to use borrowed money to conduct its affairs, future profits in an amount equal to the credits already made to the account of the managers were to be used for the purchase of petitioner’s stock owned by Field and Start. The first agreement specifically provided that the profits credited to the account were not to be distributed by the managers until used for the purchase of petitioner’s stock from Field and Start, “ or otherwise distributed.” This provision of the agreement was not inserted in the contract entered into on January 1, 1924.
Upon the termination of the agreements in the manner provided for therein, the managers were not to receive any distribution of profits unless the credits made in their favor for prior earnings, less losses sustained in the operation of the business, exceeded any reduction in the net assets of the petitioner from the date of the agreement under which the business was being operated at the time, to the date of termination, and then only to the extent of the excess credits. The amount of profit standing to the credit of the managers was, therefore, always subject to be reduced or wiped out entirely by future losses in the business. The loss sustained by the business during the year 1921 was deducted from the profit earned in 1922 before the excess was credited to the undivided profit account set up on the corporate books pursuant to the first agreement.
The agreement entered into January 1, 1921, was terminated at the close of the year 1923. The record does not disclose what kind of a settlement, if any, was made with the managers at that time. In his brief counsel for the petitioner admits that no part of its *1212 profits was paid to any of the managers during the taxable years, and the fact that petitioner did not deduct any of the credits made for 1922 and 1923 profits in its return for the latter year or the year 1924, would indicate, if any inference is to be drawn from the fact, that it did not regard itself as being obligated to the managers for any definite amount. A cash settlement was made with. Thomas subsequent to his withdrawal as a manager on December 31, 1925, but we have not been informed as to the amount of the payment or the date it was jmd.
We find nothing in the agreements or other evidence of record contrary to the conclusion reached by the respondent at the time of his determination of the deficiencies in controversy that no part of the profits of petitioner was to become payable to the managers prior to the time when “borrowed capital shall no longer be required for corporation business.” The petitioner appears to have been of the same opinion during the life of the first agreement since no part of the profits earned in 1922,and 1923 was claimed as a deduction in income-tax returns for those years.
As we have pointed out, the payment of additional salary prior to the termination of the contracts of employment was conditioned upon the need for borrowed money in the business, and the liability of the petitioner on the withdrawal of any one or more of the managers depended upon whether or not there had been any reduction in the net assets of the coiporation and whether accounts receivable decreased in value within the next fifteen months. No evidence was submitted to prove that borrowed capital was not required in the business at all times during the taxable years. We are also without information as to the value of petitioner’s not assets at the time the contracts were entered into and at the cióse of each year, and the amount retained by the petitioner at the close of the year 1925 as a protection against any shrinkage in the val no of accounts' receivable. Without these facts we can not say that the petitioner was at any time during the taxable years liable to its managers for the payment of any part of the amounts being claimed as deductions.
The petitioner has failed to overcome the presumption in favor of the respondent’s determination. Accordingly, we must affirm his action.
In determining the deficiencies involved here, of the total of $22,647.04 paid each year to Field and Start, one-half to each, and claimed as salary deductions, the respondent allowed a yearly salary of $5,000 to each officer and disallowed the remainder. In his answer filed herein, the respondent claims error in allowing such salaries as deductions and alleges that no salary deductions should be allowed for these officers. At the hearing, the petitioner amended its peti *1213 tion by alleging error on the part of the respondent in not allowing the full amount paid.
The agreements under which the claimed deductions were paid provided for a payment each year to each officer of $11,823.52, which amount was not only to compensate them for services rendered to petitioner but included a return on their investments in the business, represented by their stock. We do not know the amount or value of their investments, or what the parties to the agreements regarded as a fair return on money Field and Start had invested in the business. The testimony of Jones, the only witness at the hearing, that the services of each officer were worth from $10,000 to $15,000 during each taxable year, is too indefinite to accept as the basis for an allowance, in view of the fact that some part of the amount paid each year was regarded as a return on the investment of each officer.
The officers did perform some service for petitioner during each of the taxable years before us, and the latter is entitled to deduct a reasonable amount of compensation paid to them for services rendered. The respondent has failed to show that the amounts allowed by him are unreasonable. Under these circumstances, we will not disturb the respondent’s action in allowing a deduction of $5,000 as salary each taxable year for each officer:

A final order wild be entered finding the deficiencies in the amounts determined by the respondent.