## AMERICAN DENTAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7847.

Circuit Court of Appeals, Seventh Circuit.

May 15, 1942.

---

James A. O'Callaghan, of Chicago, Ill., for petitioner.

J. P. Wenchel and Vernon F. Weekley, both of Washington, D. C., Bur. of Int. Rev., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Newton K. Fox, Sp. Asst. Attys. Gen., for respondent.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner has appealed from a decision of the Board of Tax Appeals confirming the Commissioner's determination of a deficiency in petitioner's income tax for 1937. The question we are confronted with at the threshold is whether the cancellation of certain indebtedness owed by the petitioner in the amount of $19,234.21 constituted taxable income.

In December, 1933 petitioner was indebted to its landlord for past-due rent in the sum of $15,298.99. On December 19, 1933 when petitioner's president and landlord's agent were negotiating a new lease, petitioner's president asked for an adjustment on the past-due rent. The landlord's agent replied: "Well, I will make an adjustment of this item. Go ahead and sign up the new lease, and so forth, and I will give it a little thought and will let you hear from me."

The new lease, which reduced the annual rent from $15,200 to $8,400, was signed.

Nothing more was said about adjustment of the past-due rent until April, 1934, when petitioner again took it up with the landlord's agent, who said: "Pay me $7,500, and I will call it square and forget the rest of it." [1]

The petitioner in 1936 was also indebted to three firms for interest upon past-due accounts for merchandise. In November, 1936 petitioner's president secured from these three firms separately adjustments in these past-due accounts, cancelling the interest accrued after January, 1932. Petitioner kept its books and made its income tax return upon an accrual basis, and up to 1937 it took deductions for the rent and interest which were allegedly adjusted, as we have indicated. The rent forgiven offset income of $7,798.99, and the indebtedness for interest forgiven offset income of $11,435.22. There is no question of wilful misrepresentation or fraudulent intent. The Commissioner concedes in his brief that there is no question of estoppel.

In 1937 petitioner paid in three equal installments $7,500 to its landlord, and in its income tax return for 1937, it acknowledged as a "credit to surplus" the cancelled rent and interest. The Board held that the cancelled rent and the cancelled interest in the sum of $19,234.21 constituted income taxable to the petitioner in 1937 and were subject to the undistributed profits tax, and upon this basis confirmed the Commissioner's determination of a deficiency.

The Government freely conceded that unless the forgiveness of indebtedness in each of these instances was based upon a consideration, it would amount to a gift, and gifts are not taxable as income to the donee. Article 64 of Regulation 77 promulgated by the Commissioner of Internal Revenue reads as follows: " * * * If, however, a creditor merely desires to benefit a debtor and without any consideration therefor cancels the debt, the amount of the debt is a gift from the creditor to the debtor and need not be included in the latter's gross income. * * *"

Were these debts cancelled by the creditor for the benefit of the debtor and without consideration? The negotiations

---

[1] The Board found: "The petitioner * * * negotiated a new lease in December 1933, at which time the annual rental was reduced from $15,200 to $8,400. There was then due from the petitioner $15,298.99 in back rent. * * * The renting agent said he would make an adjustment, and, in April 1934, advised the petitioner that he would accept $7,500 in payment of the back rent and would cancel the rest."

for the new lease took place in December, 1933, and the lease was then agreed upon and executed. At that time, the taxpayer-petitioner asked for an adjustment of the past-due rent account. The landlord's agent said: " * * * I will make an adjustment of this item. Go ahead, and sign up the new lease, and so forth, and I will give it a little thought and will let you hear from me." That terminated the negotiations at that time. No promise was made as to what the adjustment would be. The matter of debt forgiveness was not agreed upon but was left for future negotiations. If the landlord had said: "If you will make the new lease, I will reduce your indebtedness to $7,500," the making of the new lease might have constituted consideration for the promise to forgive. But that was not done. The landlord said in substance: "You go ahead and make the new lease and I will think it over and let you know later." It was all left to future negotiations. The future negotiations followed the next April, when the landlord's agent said: "Well, pay me $7,500 and I will call it square, and forget the rest of it." The petitioner-tenant said: "Well, I haven't $7,500." The landlord's agent replied: "You worry about raising the $7,500; get busy and raise it and pay it when you can, and forget the rest of it." In the year 1937, the taxpayer-tenant paid the $7,500 in three equal installments. There was no consideration to the landlord for the cancellation of the debt. There is no evidence that the landlord, if it had been unyielding, could not have collected the whole of its rent account. This it did not do. It forgave all but $7,500 of the rent for no consideration whatsoever to the landlord, and merely as a benefit to the debtor.

In the negotiations for a reduction of the indebtedness for interest due, there was no semblance of a consideration. The debtor-taxpayer went to three of its creditors and said in substance: "We don't get any interest on our past-due accounts. You should not charge us with interest on ours to you." The creditors readily agreed and forgave the debt. The creditors might have expected more business in the future, but the debtor-taxpayer did not promise any. Certainly the creditors' expectation was not consideration. The transaction was a pure cancellation of indebtedness, without any consideration and for the benefit of the debtor.

■ Since, therefore, there was no consideration for the cancelled debts, and the cancellations inured only to the benefit of the debtor, the amount of the debts as cancelled is a gift from the creditors to the debtor, within the meaning of the Treasury Department's regulations, and the debtor was not required to include it in gross income.

The Board stated in its opinion: "No evidence was introduced to show a donative intent upon the part of any creditor. The evidence indicates, on the contrary, that the creditors acted for purely business reasons and did not forgive the debts for altruistic reasons or out of pure generosity. In none of the four instances was the forgiveness a gift."

Suppose the creditors did act for purely business reasons. As long as there was no consideration for the cancellation, the intent to give necessarily followed. Evidently the Board confused intent with motive. There is no evidence that the creditors did that which they did not intend to do. The creditors' motives are immaterial. South Dakota v. North Carolina, 192 U.S. 286, 310, 24 S.Ct. 269, 48 L.Ed. 448.

Our decision may result in the Government getting no tax, although the taxpayer had benefited by deducting the rent and interest accrued. The taxpayer had offered to pay the Department all the tax it had saved by taking the deductions for accrued rent and interest, but the Commissioner refused and insisted that the entire sum be treated as income for the year 1937. The unfairness of the Government's position is evidenced by taxing this sum of $19,234.21 as excess profits received in 1937. Of course, the taxpayer never received a nickel it could have distributed as dividends. It received cancellation of debts for services and goods already consumed. How it could have distributed that as a dividend is not apparent. It is not difficult to imagine what would have happened to this debtor-taxpayer if it had inveigled its creditors into cancelling these debts on the basis that the debtor was hard up, and then the debtor had distributed a like amount in dividends!

We therefore hold that the indebtedness was cancelled for the benefit of the debtor and without consideration, and was not taxable. The decision of the Board of Tax Appeals is reversed.