The Midland Tailors, a corporation, v. Commissioner.
Midland Tailors v. Commissioner
Docket No. 110613.
United States Tax Court
1943 Tax Ct. Memo LEXIS 246; 2 T.C.M. (CCH) 281; T.C.M. (RIA) 43292; June 19, 1943
*246 Eugene Bernstein, Esq., for the petitioner. George E. Gibson, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in income taxes of $3,167.87 and excess-profits taxes of $1,400.17 determined against the petitioner for the year 1938. The issue is whether the Commissioner correctly determined that the sum of $25,508.65, representing accrued but unpaid portion of salaries of officer-stockholders for 1936 and 1937 transferred from so-called officers' "Loan Accounts" to surplus in 1938 constituted taxable income to the petitioner in that year. Petitioner filed its Federal income tax return for the year 1938 with the collector of internal revenue for the First District of Illinois at Chicago, Illinois. The record consists of a stipulation of facts which are incorporated by reference herein, oral testimony and documentary proof. Findings of Fact The petitioner was incorporated under the laws of the State of Illinois on January 18, 1919. It is engaged in the wholesale tailoring business. It kept its books and filed its Federal income tax returns on the accrual basis. During the years 1936 to 1938, inclusive, its *247 authorized capital stock was 500 shares of $100 par value each. Its three stockholders each held 166 fully paid shares, were its officers and constituted its board of directors. During the period involved Joseph L. Rosenthal, also known as Thal, was president, Earl I. Rosenthal, also known as Thal, secretary, and Joseph Kores, treasurer. At the annual meeting of its directors held January 20, 1935, the following salary resolution was adopted: RESOLVED, that the salary of Mr. Joseph L. Rosenthal, President of the Company, be fixed at $6,500.00 for the year beginning January 1, 1935 and ending December 31, 1935, payable in weekly installments of $40.00 or more, the difference still due at the end of the year to be either withdrawn or allowed to stand in the business as a loan account. Similar resolutions fixing identical amounts with respect to Earl I. Rosenthal, secretary, and Joseph Kores, treasurer, were also adopted. On December 10, 1935 the board adopted the following preamble and resolutions: WHEREAS, it appears advisable to increase the net worth of this company, and decrease its liabilities, and WHEREAS, this company is indebted to each of its directors to an amount in *248 excess of $7,000. Therefore, be it and it is hereby resolved that each of the directors of this company donate $5,000 of the amount due him by the company to its donated surplus. At the annual meeting of its directors held January 20, 1936, the following resolution was adopted: Resolved, that the salary of Mr. Joseph L. Rosenthal, President of the company, to be fixed at $12,000.00 for the year beginning January 1, 1936 and ending December 31st, 1936 payable in weekly installments of $90.00 or more the difference still due at the end of the year to be either withdrawn or allowed to stand in the business as a loan account. Separate resolutions were adopted similar in terms and amounts with respect to Earl I. Rosenthal and Joseph Kores, At a special meeting of the board of directors held July 1, 1936, the following resolutions were adopted: RESOLVED, that the annual salary for each of the officers of the company, namely, Joseph L. Rosenthal, Earl I. Rosenthal, and Joseph Kores, be fixed and adjusted at $15000.00 each for the year 1936, and any amounts paid to said officers prior to July 1, 1936, and such sums as shall be paid after July 1, 1936, shall be charged against said *249 sum of $15000.00 each and any sums unpaid at the close of the year 1936 shall be set up as an unqualified liability on the books of the corporation and paid to the said officers as soon thereafter as possible. The corporation minutes contain no resolution fixing the salaries of its officers for the year 1937. During 1936 petitioner entered on its books as an accrued liability for officers' salaries the amount of $45,000, and on its Federal income tax return for that year, took a deduction of $45,000 as "compensation of officers." The return disclosed a net income for 1936 of $7,654.29 and a tax liability of $1,415.90 which it paid. Upon audit the $45,000 deduction was aprpoved; but other adjustments increased net income to $8,016.58 resulting in a deficiency tax of $94.87 which was assessed and paid. No further deficiency for income tax has been asserted for 1936 and the period of limitations expired March 1940. During 1937 petitioner entered on its books as an accrued liability for officers' salaries the amount of $24,000, and on its Federal income tax return for the year 1937 it took a deduction of $24,000 as "compensation of officers." The return showed a net income for 1937 *250 of $1,588.37 and a tax liability of $229.36 which was paid. Upon audit the salary deduction of $24,000 was approved, but other adjustments reduced net income to $1,181.15, resulting in an over-assessment of income tax of $58.80, which was credited against social security taxes due. No other deficiency for income tax for 1937 has been asserted and the period of limitations expired March 15, 1941. Each of the three officers reported in their Federal income tax returns for the year 1936 the sum of $15,000 and for the year 1937 the sum of $8,000 and paid the tax thereon. No deficiencies have been asserted against or any refunds claimed by any of these individuals, for either the years 1936 or 1937, and the statutory periods of limitation for assessing deficiencies and filing claims for refund for said years have expired. The full amount of the salaries accrued was never paid. As of January 1, 1938, the petitioner's books showed the unpaid portions of 1936 and 1937 salaries to its three officers aggregating $29,149.82, carried as credit balances in officers' "loan accounts" as follows: Joseph L. Rosenthal - Loan a/c
$9,704.09
Earl I. Rosenthal - Loan a/c
9,703.54
Joseph Kores - Loan a/c
9,742.19
*251 During the month of May 1938 the following entries were made in petitioner's general journal: Debit
Credit
E. I. Rosenthal - Loan a/c
$1,350.43
Joseph Kores - Loan a/c
158.22
Surplus
$ 1,508.65 To equalize previous donation to surplus: J. L. Rosenthal - Loan
a/c
8,000.00
E. I. Rosenthal - Loan
a/c
8,000.00
Jos. Kores
8,000.00
Surplus
24,000.00
The surplus above referred to in the journal entries represented ledger account reflecting petitioner's earned surplus. On June 30, 1938 the following adjusting entry was made in petitioner's general journal: Debit
Credit
Surplus
$25,508.65
Paid-in surplus
$25,508.65
The balance sheets set forth in Schedule O of petitioner's Federal income tax return for the year 1938 listed as "other liabilities" the following: Beginning
End of
of tax-
taxable
able year
year
Due to officers and stock-
holders
$29,428.28
$6,374.27
The item of $29,428.28 is composed of the $29,149.82 item above referred to plus an additional amount owed by petitioner to Earl I. Rosenthal of $278.46. The difference between the $29,428.28 and the $6,374.27 is accounted for by the amount of $25,508.65 *252 debited to loan accounts and the net amount of credits arising out of 1938 transactions not in controversy herein. During the early part of 1938 petitioner was having difficulty in getting credit with its bank and shipments of materials from mills. Petitioner's bank insisted upon and received an agreement subordinating the indebtedness on its books for back salaries to the indebtedness owing to it for a loan of $8,000. For the purpose of securing a line of credit from woolen mills, the petitioner in February 1938 submitted to the National Credit Office, Inc., 2 Park Avenue, New York City, New York, a financial statement as of December 31, 1937, which showed as a liability "Loans from officers - $32,428.28". [1]
In reply thereto the National Credit Office, Inc., under date of March 14, 1938, wrote in part as follows: We note that among your current liabilities is included the amount due from officers - $32,428.28. On the statement as submitted this item must be considered a current liability. *253 Since this seriously affects your working capital position and also represents an increased hazard for creditors we ask that you consider subordinating this item to your merchandise creditors. We would also appreciate a breakdown of this item as to whom the amounts are due and to whom they are owing. The petitioner on March 16, 1938, in replying to the credit agency's letter, after stating the matter of giving a subordinating agreement had been referred to its lawyer, continued as follows: We would have transferred most of this to the surplus fund of the corporation but our auditor decided it was best to wait until the Government had figured and finished with the 1936 check-up before doing so, otherwise we would have made that change heretofore. Also wish to state that it is not our intention to draw this money out - at least for this coming year. On April 11, 1938 petitioner again wrote the credit agency as follows: In accordance with your request we are enclosing herewith the subordination agreement subordinating the amounts due to the officers of this company in the amount of $24000.00 to the creditors of the company. We ask your cooperation in seeing to it that copies of *254 this subordination agreement are not passed out or given to anybody asking for them indiscriminately and that they be furnished only to those of our largest creditors who may directly ask for them. We also wish to ask that whenever you submit a copy of this subordination agreement that you furnish us with the name of the creditor or subscriber to whom you are furnishing a copy so that we may have a record of their names in our file. Thanking you for your interest and cooperation in the matter, we are * * * On April 14, 1938 the agency wrote petitioner stating it could not comply with the restrictions contained in its last letter and requesting they be withdrawn, to which petitioner in response, $ under date of April 19, 1938, wrote as follows: Answering your letter of April 14th, we wish to advise that the same day your letter arrived, we received a visit from the government man who has just finished auditing the 1936 income and everything including the personal drawing accounts for that year has been O.K.'d, and we have instructed our auditor to transfer $24,000.00 from personal accounts into surplus. If you so desire, you can have a copy of the trial balance as of April 30th, *255 and if you wish, you can write the auditor, Mr. Romanek, for a verification of the contents of this letter. Under the circumstances you can return the subordination agreement, and we feel sure that this will now be more satisfactory to you. The National Credit Office, Inc., on April 21, 1938 returned the subordination agreement and under date of April 22, 1938 issued to its clients a "Current Information" statement regarding petitioner which included a notation to the effect $24,000 of the amount due officers had been transferred to surplus and concluded with the following "Credit Suggestion"; An average line $3,500 suggested pending adjustment on receipt of mid-year statement. In determining the deficiency herein, the Commissioner included in the petitioner's taxable net income for the year 1938 the amount of $25,508.65 which was transferred from the officers' loan accounts to surplus accounts on petitioner's books in 1938. Opinion The sole question is whether under the circumstances here the "cancellation" or "forgiveness" of the amounts accrued carried on the books of petitioner as credit balances in the officers' "loan accounts" which were transferred in the tax year to *256 "earned surplus" and then to "paid-in surplus" account, resulted in the realization of taxable income to petitioner. The Commissioner has so determined. The petitioner makes two contentions. The first is that the officer-shareholders of the petitioner did not forgive or cancel the debts due them from the corporation but that these debts were, in effect, paid and satisfied by the petitioner and that the officer-shareholders used the proceeds of that transaction in paying voluntary assessments upon their stock in petitioner and that under art. 22(a)-17 of Regulations 101 [2] the petitioner therefore realized no income. The second position of the petitioner is that, assuning that the officer-shareholders of petitioner did forgive the debts due them for accrued salaries, that forgiveness was gratuitous, was a contribution to the capital of the corporation and the corporation realized no income under the same Regulations, art. 22(a)-14(a). [3]
*257 There may be suggestions in this record that the original accruals of salaries by the petitioner were improper either because of unreasonableness of the amounts or because of the contingent as distinguished from fixed character of the liability of the petitioner, at the time of the accruals, to pay them. The respondent, however, has never questioned the propriety of these accruals and does not do so here. See . It is to be assumed that he had good reason therefor. The officer-shareholders, at least for 1936 and 1937, reported and paid taxes on the full amounts of these accruals. Respondent's position is simply that the transaction was not the payment of a voluntary assessment upon stock in petitioner under the first cited Regulation, but a forgiveness of indebtedness to its three shareholders by petitioner which resulted in the realization of income to petitioner under the cited Regulation since, he argues, it was not the forgiveness of a principal debt. The italicized words of the Regulation quoted in the margin were added as of January 1, 1938. Respondent urges that the Regulation as it formerly *258 appeared should be construed as it now reads. But, in any event, it is argued that its import, as changed and effective during the taxable year, renders taxable the forgiveness of the indebtedness here for accrued and unpaid salaries from petitioner to its shareholders. In the recent opinion of this Court in , it was held that "as a legal proposition" the voluntary cancellation of debenture interest by a debenture holder, who was also a stockholder, was a gift and thus not taxable income to the recipient corporation, upon the authority of . In that Opinion of this Court it was added that "The fact that the regulations may give ground for calling it also a contribution of capital, cf. , does not affect the decision." Since there is no difference, at least for present purposes, between the facts here and those in the Hall case, supra, we follow the precedent there established and reverse the respondent in his contested determination. Decision will *259 be entered for the petitioner. Footnotes
1. The item of $32,428.28 is exactly $3,000 more than the item of $29,428.28 shown on the opening balance sheet in the 1938 return. The record contains no explanation of this discrepancy.↩
2. Art. 22 (a)-17. Contributions to corporation by shareholders. - If a corporation requires additional funds for conducting its business and obtains such needed money through voluntary pro rata payments by its shareholders, the amounts so received being credited to its surplus account or to a special capital account, such amounts will not be considered income, although there is no increase in the outstanding shares of stock of the corporation. The payments under such circumstances are in the nature of voluntary assessments upon, and represent an additional price paid for, the shares of stock held by the individual shareholders, and will be treated as an addition to and as a part of the operating capital of the company. ↩
3. Art. 22 (a)-14. Cancellation of Indebtedness. - (a) In General. - The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. (See article 22 (a)-18. In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt.↩