**PUTOMA CORP., Successor by Merger of Pro-Mac Company, et al., Petitioners-Appellees Cross-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant Cross-Appellee.**

No. 77–1591.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1979.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Dept. of Justice, Tax. Div., Washington, D. C., Michael L. Paup, Richard Farber, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellant cross-appellee.

Richard Lee Brown, Fort Worth, Tex., for petitioners-appellees cross-appellants.

Before GODBOLD, Circuit Judge, SKEL-TON, Senior Judge *, and RUBIN, Circuit Judge.

SKELTON, Senior Judge.

This is an income tax case that involves an appeal by the Commissioner of Internal Revenue (Commissioner or Government) from a decision of the United States Tax Court, and cross-appeals by Putoma Corporation (Putoma), successor by merger of Pro-Mac Company (Pro-Mac), with J. M. Hunt and wife, Inez Hunt, as appellees in the appeal of the Commissioner.

At all times pertinent to this case, Putoma Corporation and Pro-Mac Company were Texas corporations using the accrual basis of accounting.

The Commissioner of Internal Revenue appeals from decisions of the Tax Court in which the court ruled that taxpayers Pro-Mac Company[1] and Putoma Corporation did not realize taxable income as the result of the cancellation by J. M. Hunt of their liability for accrued interest due him on Putoma's notes. The two corporations have filed cross-appeals from the portions of the Tax Court's decisions disallowing certain deductions claimed for accrued salaries and bonuses for J. M. Hunt and Lee Roy Purselley. The Tax Court filed its findings of fact and opinion on June 30, 1976 (reported at 66 T.C. 652) and entered its decisions on December 15, 1976.

The issues on appeal are as follows:

THE ISSUE PRESENTED BY THE COMMISSIONER IS:

(1) Whether the Tax Court erred in holding that said accrual basis corporations, which previously had accrued and deducted interest which they owed, but never paid, to J. M. Hunt, one of their shareholders, did not realize taxable in-come when the shareholder cancelled their liability for the accrued interest.

THE ISSUE PRESENTED BY THE TAXPAYERS IS:

(2) Whether the Tax Court erred in holding that said accrual basis corporations, which accrued certain compensation for their officer shareholders, Lee Roy Purselley and J. M. Hunt, under a fixed formula, but which was not paid, were not entitled to deduct such compensation on the ground that their obligation for same was conditional and not properly accruable during the years in question.

We affirm the decision of the Tax Court on both issues.

We consider first the second issue involving the accrued compensation for officer-shareholders Purselley and Hunt, which was never paid but was deducted by the corporations.

I.  DEDUCTIONS FOR ACCRUED UNPAID COMPENSATION.

The facts relevant to this appeal by taxpayers were found by the Tax Court as follows:

At a meeting of Putoma's directors held in July, 1964, Purselley's[2] salary was set at $600 per month, retroactive from July 1, 1963. This salary was not to be paid, but was to accrue to his credit until such time as, in the judgment of the majority of directors, corporate earnings were sufficient to justify payment of the salary. In addition, as part of his compensation, Purselley was to receive 25 percent of the corporation's net profits. Compensation from July 1, 1964, was to be determined at a future meeting.

The minutes of the board of directors' meeting for Putoma held on August 23, 1965, contain the following statement relating to salary:

Upon motion duly made and seconded, the salary of Lee Roy Purselley for the

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1.  Subsequent to the years in issue, Pro-Mac Company was merged into and succeeded by Putoma Corporation.

2.  Lee Roy Purselley and J. M. Hunt each owned 50 percent of the stock of Putoma and Pro-Mac during the years in issue.

current year was fixed at $2,000.00 per month plus 25% of the net profit of the corporation after deduction of the $2,000.00 monthly salary, but before deduction for any bonus or Federal income taxes. This salary is to be retroactive from July 1, 1965. Such salary in excess of the $2,000.00 per month is not to be paid but to accrue to his credit until such time as in the judgment of the majority of the directors of the company, the company has such cash reserve in order to pay the additional salary.

Upon further motion duly made and seconded, the salary of J. M. Hunt was established at 10% of the net income of the company before the deduction of any bonus or Federal income taxes. This salary is to be retroactive from July 1, 1965.

Such salary is not to be paid, but to accrue to his credit until such time as in the judgment of the majority of the directors of the company, the company has sufficient cash reserve in order to pay the salary.

The compensation formula set out above remained unchanged until January 1, 1970. At a meeting of Putoma's directors held on December 10, 1969, bonuses for Purselley and Hunt were discontinued as of December 31, 1969, and Purselley's salary was set at $3,000 per month beginning January 1, 1970.

The following schedule shows salary and bonus accruals, and cash payments for Purselley and Hunt recorded on Putoma's books for fiscal years ended June 30, 1964, through calendar year December 31, 1971:

### LEE ROY PURSELLEY
### RECORDED ON BOOKS

| PERIOD ENDED | YEARLY SALARY | YEARLY BONUS | CASH PAYMENTS |
|---|---|---|---|
| 6/30/64 | $ 7,200 | $ 2,763.64 | $ — |
| 6/30/65 | 7,200 | 2,791.59 | 10,335.94 |
| 6/30/66 | 24,000 | 21,408.42 | 11,210.00 |
| 6/30/67 | 24,000 | 45,115.41 | 29,909.32 |
| 6/30/68 | 24,000 | 85,324.03 | 38,004.57 |
| 6/30/69 | 24,000 | 43,833.66 [3] | 33,269.86 |
| 6/30/70 | 30,000 | — | 25,480.44 |
| 12/30/70 | 18,000 | — | 14,000.00 |
| 12/31/71 | — | — | 15,473.75 |
| | $158,400 | $201,236.75 | $177,683.88 |

### J. M. HUNT

| PERIOD ENDED | YEARLY SALARY | YEARLY BONUS | CASH PAYMENTS |
|---|---|---|---|
| 6/30/64 | $ — | $ — | $ — |
| 6/30/65 | — | — | — |
| 6/30/66 | — | 8,563.87 | — |
| 6/30/67 | — | 6,711.92 | — |
| 6/30/68 | — | 34,129.61 | — |
| 6/30/69 | — | 17,533.46 | — |
| 6/30/70 | — | — | — |
| 12/31/70 | — | — | — |
| 12/31/71 | — | — | — |
| | $ — | $66,938.86 | $ — |

Pro-Mac was formed on December 1, 1966. Article V, Section 4 of Pro-Mac's by-laws provides that the salaries of corporate officers are to be fixed by the board of directors. The minutes of the organizational meeting of Pro-Mac's board of directors, however, contain no mention of officer compensation. Further, there were no board of

3. The $43,833.66 bonus accrual for Purselley for fiscal 1969, and the $17,533.46 bonus accrual for Hunt for fiscal 1969 were not recorded on Putoma's books until February 28, 1970, and April 30, 1970, respectively.

directors' minutes for Pro-Mac during the period November 30, 1966, through July 18, 1969. Nevertheless, Pro-Mac's books and records for that period reflect that the corporation consistently recorded a salary expense of $1,000 per month for both Hunt and Purselley, and further recorded a bonus expense equal to 25 percent of profits for Purselley and bonus expense equal to 10 percent of profits for Hunt. The Tax Court found, however, that the salaries and bonuses for Purselley and Hunt recorded by Pro-Mac on its books were not payable until Pro-Mac's earnings were sufficient to permit payment.

The first minutes to discuss compensation for Pro-Mac's officers were those of a directors' meeting held December 10, 1969.

At that time, it was decided to discontinue the bonuses for Purselley and Hunt and to fix Purselley's salary at $3,000 per month commencing January 1, 1970. At a subsequent meeting held August 27, 1970, a $1,000 per month salary was also voted for Hunt, retroactive to January 1, 1970. Due to the low cash condition of the corporation, Hunt's salary was to be recorded in his "accrued salary account," but was not to be paid until a later date when the corporation was "financially able."

The following schedule shows when salary and bonus amounts and cash payments for Purselley and Hunt were recorded on Pro-Mac's books for fiscal years ended July 31, 1967, through August 31, 1971 (R. 104):

### LEE ROY PURSELLEY
### RECORDED ON BOOKS

| PERIOD ENDED | YEARLY SALARY | YEARLY BONUS | CASH PAYMENTS |
|---|---|---|---|
| 7/31/67 | $ 8,000 | $ 9,366.11 | $ — |
| 7/31/68 | 12,000 | 27,466.04 | — |
| 7/31/69 | 12,000 | 14,575.63 | 30,097.54 |
| 7/31/70 | 12,000 | 4,753.85 | — |
| 7/31/71 | — | — | — |
| 8/31/71 | — | — | — |
| | $49,000 | $56,161.63 | $30,097.54 |

### J. M. HUNT

| PERIOD ENDED | YEARLY SALARY | YEARLY BONUS | CASH PAYMENTS |
|---|---|---|---|
| 7/31/67 | $ 8,000 | $ 3,746.44 | $ — |
| 7/31/68 | 12,000 | 10,986.41 | — |
| 7/31/69 | 12,000 | 5,830.25 | 30,097.54 |
| 7/31/70 | 12,000 | 1,208.20 | — |
| 7/31/71 | 5,000 | — | — |
| 8/31/71 | — | — | — |
| | $44,000 | $21,771.30 | $30,097.54 |

At a meeting of Putoma's board of directors on July 9, 1970, a discussion was held concerning the current financial condition of the corporation. It was agreed that in order to reflect a better financial condition to creditors and potential lenders, Hunt and Purselley would be asked to forgive a portion of the salaries shown owing to them on the books. Substantially the same decision was made by Pro-Mac's board of directors in a meeting held the same day.

On September 15, 1970, Purselley and Hunt forgave the following items shown owing to them on the books and records of Putoma and Pro-Mac:

| | PUTOMA | PRO–MAC |
|---|---|---|
| Lee Roy Purselley accrued salary | $ 89,109.06 | $44,453.50 |
| Hunt accrued salary | 66,938.36 | 35,673.76 |
| Hunt accrued interest | 22,170.70 | 2,779.74 |
| Hunt accrued commission | — | 6,000.00 |
| Total | $178,218.12 | $88,907.00 |

On September 15, 1970, Purselley's accrued payroll account on Putoma's books showed a balance of $194,626.32, before forgiveness, and $106,017.26 after forgiveness. Hunt's accrued payroll account on Putoma's books and records showed a balance of $66,938.36 before forgiveness and $0 after forgiveness.

On September 15, 1970, Purselley's accrued payroll balance on Pro-Mac's books showed a balance of $72,064.09 before forgiveness and $27,610.59 after forgiveness. Hunt's accrued payroll account on Pro-Mac's books showed a balance of $37,673.76 before forgiveness and $2,000 after forgiveness.

On their returns for the years in issue, the taxpayer corporations claimed deductions for the salaries and bonuses for Purselley and Hunt which they had accrued on their corporate books. The Commissioner disallowed the deductions to the extent they represented accrued but unpaid salaries on the ground that taxpayers' liability for the accrued salaries and bonuses was contingent and not fixed during the years in question.[4] The Tax Court, in a reviewed opinion with no dissents as to this issue, sustained the Commissioner's determination.

Ever since the Supreme Court rendered its opinion in *United States v. Anderson*, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926), it has been the rule that accrual taxpayers, such as Putoma and Pro-Mac in the instant case, may deduct an expense in the taxable year in which "all the events" have occurred which determine the fact of liability and which fix with reasonable certainty the amount of such liability. In that case the court said:

"Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax

does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued." 269 U.S. 440–441, 46 S.Ct. 134.

The "all events" test has been applied many times by various courts since the decision in *Anderson* was handed down. See *Brown v. Helvering*, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934); *Dixie Pine Products Co. v. Commissioner*, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); *Trinity Construction Co. v. United States*, 424 F.2d 302 (5 Cir. 1970); *Guardian Investment Corp. v. Phinney*, 253 F.2d 326 (5 Cir. 1958); *United States v. Consolidated Edison Co.*, 366 U.S. 380, 385, n. 5, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961); *Clevite Corp. v. United States*, 386 F.2d 841, 843, 181 Ct.Cl. 652, 658 (1967); *Denver & Rio Grande Western Railroad Co. v. Commissioner*, 38 T.C. 557, 572 (1962); *Turtle Wax, Inc. v. Commissioner*, 43 T.C. 460, 466–67 (1965); *Union Pacific R. R. Co. v. United States*, 524 F.2d 1343, 208 Ct.Cl. 1 (1975); and *Koehring Co. v. United States*, 421 F.2d 715, 190 Ct.Cl. 898, 905 (1970). In fact, the test is now included in the Treasury Regulations as follows:

"Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Treas.Reg. § 1.461–1(a)(2) (1970), promulgated by T.D. 6282, 1958–1 Cum.Bull. 215,

---

4. In the alternative, the Commissioner determined that if the accrued salary deductions were proper, then the subsequent cancellation of the liability for those salaries gave rise to income, taxable to the corporations under the

tax-benefit rule. Since the Tax Court adopted the Commissioner's primary position, it did not have occasion to rule on his alternative position, and, therefore, the issue is not before us.

22 F.R. 10686, Dec. 25, 1957, 26 C.F.R. § 1.461–1(a)(2) (1970).

■ Stated conversely, the accrual of an item of expense is improper where the liability for such item in the taxable year is contingent upon the occurrence of future events. *Security Flour Mills Co. v. Commissioner*, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944); *Brown v. Helvering, supra.* The Supreme Court stated in *Brown, supra* :

"Except as otherwise specifically provided by statute, a liability does not accrue as long as it remains contingent * * * ." 291 U.S. 200, 54 S.Ct. 360.

This court held in *Guardian Investment Corporation v. Phinney, supra* :

"A contingent obligation may be a liability, but it is not a debt: and accrual is improper for tax deductions when the liability is contingent." 253 F.2d 329.

The Court of Claims held in *Union Pacific R. R. Co. v. United States, supra* :

"So long as a liability remains contingent or if the liability has attached but the amount cannot be reasonably estimated, a business expense deduction is not allowed." 524 F.2d 1350, 208 Ct.Cl. 18.

The foregoing authorities show that without dispute the all-events test is incorporated in the law. The only question to be answered in this case is whether or not the test has been met. Putoma and Pro-Mac contend that the accrued salaries and bonuses were definite fixed obligations that were mathematically arrived at under an authorized and definite formula, and that only the payment was deferred. They argue that under these facts the all-events test has been complied with. We do not agree.

The minutes of Putoma's Board of Directors' meeting held on August 23, 1965, quoted above, show that the Board set Purselley's salary at $2,000 per month month plus a bonus of 25% of the net profit of the corporation. However, the payment of the bonus was made conditional on the financial condition of the corporation by the following minutes:

"Such salary in excess of the $2,000 per month is not to be paid but to accrue to his credit until such time as in the judgment of the majority of the directors of the company, the company has such cash reserve in order to pay the additional salary."

As a part of the same minutes, the Board set Hunt's salary at 10% of the net income of the corporation which was not to be paid, like Purselley's bonus, until such time as in the judgment of the directors, the corporation had sufficient cash reserve in order to pay the salary. In this regard, the minutes provided:

"Upon further motion duly made and seconded, the salary of J. M. Hunt was established at 10% of the net income of the company before the deduction of any bonus or Federal income taxes. This salary is to be retroactive from July 1, 1965. Such salary is not to be paid, but to accrue to his credit until such time as in the judgment of the majority of the directors of the company, the company has sufficient cash reserve in order to pay the salary."

The compensation formula set out above remained unchanged until January 1, 1970. At a meeting of Putoma's directors held on December 10, 1969, bonuses for Purselley and Hunt were discontinued as of December 31, 1969, and Purselley's salary was set at $3,000 per month beginning January 1, 1970.

It is clear from these minutes of the Board that Putoma had no fixed obligation during the years involved to pay Hunt's salary or Purselley's bonus. Such obligation was not to come into being until sometime in the future when the directors determined that the corporation had sufficient cash reserve to make the payments.

Pro-Mac had a similar arrangement. Its books showed that Purselley was entitled to a bonus of 25% of the company's profits and that Hunt was entitled to a bonus of 10% of the profits of the company. The Tax Court found that Pro-Mac's liability for these salaries and bonuses, like those of Putoma,

were contingent on the financial condition of the company.[5]

We conclude that the obligation of Putoma and Pro-Mac to pay the salaries was not a fixed obligation but was contingent and conditioned on future events, namely, the financial condition of the corporations and the determination of the same by their Boards of Directors. In addition to the authorities cited above that prohibit the deduction of contingent and conditional obligations, see this court's decision in *Burlington-Rock Island Railroad Co. v. United States*, 321 F.2d 817 (5 Cir. 1963), *cert. denied*, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964). In that case, the taxpayer sought to deduct accrued but unpaid interest on its debt to its shareholder-creditors. Under the terms of an agreement entered into with its creditors, the taxpayer was required to make the interest payments "from time to time, insofar as its cash situation will reasonably permit." In disallowing the claimed interest deductions, this Court pointed out that the agreement created only a conditional obligation to pay the interest and that the creditors could enforce payment only by showing that taxpayer had sufficient funds for that purpose. The court then went on to conclude:

"Burlington's [taxpayer's] duty to pay the statutory interest was thus contingent upon its financial situation, and no legal obligation could arise under the agreement until the occurrence of that contingency." 321 F.2d 821.

Also, see *Pierce Estates v. Commissioner*, 195 F.2d 475 (3 Cir. 1952). There, the taxpayer was obligated to pay annual interest at a fixed rate but only from its net income "as ascertained and declared by its board of directors." The court held that the taxpayer had correctly deducted the interest in the year of payment rather than accruing and deducting the interest each year because its legal duty to pay the interest was contingent on the actions of its directors. In so holding, the court stated:

"Because interest is compensation for the use or forbearance of money it ordinarily accrues as an item of expense from day to day even though its payment may be deferred until a latter date. But this is not true if the payment is not merely deferred but the obligation to pay at all is wholly contingent upon the happening of a later event as, for example, the subsequent earning of profits. In the latter case, the interest may not be regarded as an accrued expense until the year in which, by the earnings of the profits the contingency is satisfied and the obligation to pay becomes fixed and absolute."[6] 195 F.2d 477.

We hold that the all-events test was not met as to salaries and bonuses of Purselley and Hunt and that the deductions of such items were improperly made by Putoma and Pro-Mac.[7]

## II. CANCELLATION BY SHAREHOLDER HUNT OF INDEBTEDNESS FOR ACCRUED INTEREST OWED TO HIM BY THE TWO CORPORATIONS

The facts regarding the appeal of this issue by the Commissioner were found by the Tax Court, as follows:

Putoma Corporation, which was organized in 1963, and Pro-Mac Company, which

---

5. The Commissioner contends that Pro-Mac was not obligated to pay such salaries and bonuses for the further reason that there were no minutes of the Directors, as required by its By-Laws, that authorized them. In view of our disposition of this part of the case, we do not reach that question.

6. Additional cases denying deductions for contingent and conditional obligations are: *Gounares Bros. & Co. v. United States*, 292 F.2d 79 (5 Cir. 1961); *E. B. & A. C. Whiting Co. v. Commissioner*, 10 T.C. 102, 118–119 (1948); *Ames Reliable Co. v. Commissioner*, 44 B.T.A.

176 (1941); *Empire Sprinkler Co. v. Commissioner*, 18 B.T.A. 1126 (1930); *Field and Start, Inc. v. Commissioner*, 17 B.T.A. 1206 (1929) affirmed *per curiam*, 44 F.2d 1014 (2 Cir. 1930).

7. The Commissioner contends alternatively that if the salary and bonus deductions were properly made, Putoma and Pro-Mac should be required to restore them to their income under the tax-benefit rule when they were forgiven by Purselley and Hunt. In view of our disposition of this part of the case, we do not reach that question.

was formed in 1966, were both Texas corporations. Both corporations have always kept their books and records and filed their corporate income tax returns using the accrual basis of accounting. J. M. Hunt and Lee Roy Purselley each owed 50 percent of the stock of Putoma and Pro-Mac during the years in issue. Purselley served as president of both corporations while Hunt was treasurer of Putoma and secretary-treasurer of Pro-Mac. Putoma's board of directors consisted of Purselley, Hunt and Harold Wright, Putoma's accountant. Pro-Mac's board of directors was comprised of Purselley, Hunt and H. L. Farquhar.[8]

Putoma and Pro-Mac were engaged in the business of making complex structural aircraft parts for the F-111 airplanes then being built by General Dynamics Corporation. On several occasions, Hunt purchased machinery needed by Putoma and Pro-Mac and resold it to the corporations at his cost. Hunt received no cash from the corporations with respect to these sales but instead received interest-bearing notes secured by chattel mortgages. Putoma and Pro-Mac claimed deductions on their returns for the accrued interest on the notes. The interest, however, was not paid to Hunt. Accordingly, Hunt as a cash basis taxpayer, did not include in his taxable income the accrued interest claimed as a deduction by Putoma and Pro-Mac.

On September 15, 1970, Hunt forgave the total amount of the accrued interest owed to him by both corporations ($24,950.44).[9] The Commissioner determined that the cancellation of the previously deducted liability for accrued interest gave rise to taxable income to Putoma and Pro-Mac under the tax-benefit rule. In the alternative, the Commissioner determined that the amount of the cancelled accrued interest was includ-

able in the income of Hunt. The Tax Court rejected the Commissioner's alternative contention that the amount of cancelled interest was includable in the gross income of Hunt, a cash basis taxpayer. The Government filed a notice of appeal from this part of the Tax Court's decision (T.C. No. 7471-73), but decided not to prosecute the appeal, and it has requested in its brief that such appeal be dismissed. Accordingly, the appeal of such issue is hereby dismissed.

The Tax Court in a reviewed opinion rejected the Commissioner's position as to the cancellation of the accrued interest and held that such cancellation constituted a nontaxable contribution to the capital of Putoma and Pro-Mac, notwithstanding the tax benefits secured by the corporations through their prior interest deductions. Judge Simpson filed a dissenting opinion, in which Judges Raum and Sterrett joined, wherein he expressed the view that the majority erred in failing to apply the tax-benefit rule.

The sole question to be resolved in this part of the instant case is whether or not the tax-benefit rule required Putoma and Pro-Mac to restore the deducted interest owed to Hunt to their income in the year Hunt cancelled their interest indebtedness. The tax-benefit rule is generally described as follows:

"The recovery of an item previously deducted—is includible in income in the year of recovery *except to the extent the previous deduction did not result in any tax benefit to the taxpayer.*" 34 Am. Jur.2d, *Federal Taxation*, ¶ 5251, p. 217, 1978.[10]

Section 111 of the 1954 Code accorded tax-benefit treatment only to the recovery

---

**8.** Subsequent to the years in issue, Pro-Mac Company was merged into and succeeded by Putoma Corporation.

**9.** Putoma and Pro-Mac suffered financial setbacks as a result of the drastic cutback in the F-111 program. The cancellation of the interest previously accrued was intended to improve the financial condition of the corporations in the eyes of potential creditors.

**10.** This rule is included in § 111 of the Internal Revenue Code of 1954, in pertinent part, as follows:

"(a) General rule.—Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax or amount.

"(b) Definitions.—For purposes of subsection (a)—

of bad debts, prior taxes and delinquency accounts, but Treasury Regulations have broadened the rule of exclusion by extending similar treatment to "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years—." See Treasury Regulation, § 1.111–1.[11]

Congress has provided in Sections 102 and 118 of the Code certain exclusions from gross income, namely (as far as this case is concerned), the value of property acquired by gift, or in the case of a corporation, contribution to its capital.[12]

These Sections of the Code are, in effect, exceptions to the tax-benefit rule, when applicable to a particular case under consideration, and in such an instance prevent the universal application of the rule "across the board" in every case. This is especially true where, as in the instant case, the recovery of an item deducted by the taxpayers in a previous year and recovered in a later year is both a gift and a contribution to the capital of a corporation.

Pursuant to Section 118 of the Code, the Treasury Department issued Regulation, Sec. 1.118–1, which provides that contributions to the capital of a corporation, whether by a shareholder or an outsider, are not included in the gross income of the taxpayer corporation.[13]

Prior to 1939, Treasury Regulations 101, Art. 22(a)–14 (1938 Revenue Act) provided,

> *    *    *    *    *    *
> "(4) Recovery exclusion.—The term 're-covery exclusion', with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Secretary or his delegate, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this subtitle * * * reduced by the amount excludable in previous taxable years with respect to such debt, tax, or amount under this section." (26 U.S.C.A. § 111)

**11.** Treas.Reg. § 1.111–1 (1956), "Recovery of certain items previously deducted or credited," provides:

"(a) General. Section 111 provides that incomes attributable to the recovery during any taxable year of bad debts, prior taxes, and delinquency amounts shall be excluded from gross income to the extent of the 'recovery exclusion' with respect to such items. The rule of exclusion so prescribed by statute applies equally with respect to all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years, including war losses referred to in section 127 of the Internal Revenue Code of 1939, but not including deductions with respect to depreciation, depletion, amortization, or amortizable bond premiums. The term 'recovery exclusion' as used in this section means an amount equal to the portion of bad debts, prior taxes, and delinquency amounts (the items specifically referred to in section 111), and of all other items subject to the rule of exclusion which when deducted or credited for a prior taxable year, did not result in a reduction of any tax of the taxpayer under subtitle A * * * *." 381 F.2d 402, 180 Ct.Cl. 664.

**12.** "Sec. 102. Gifts and Inheritances.

(a) General rule.—Gross income does not include the value of property acquired by gift, bequest, device or inheritance." (26 U.S.C.A., Sec. 102)

"Sec. 118. Contributions to the Capital of a Corporation.

(a) General rule.—In the case of a corporation gross income does not include any contribution to the capital of the taxpayer." (26 U.S.C.A., Sec. 118)

**13.** § 1.118–1. Contributions to the capital of a corporation.—In the case of a corporation, section 118 provides an exclusion from gross income with respect to any contribution of money or property to the capital of the taxpayer. Thus, if a corporation requires additional funds for conducting its business and obtains such funds through voluntary pro rata payments by its shareholders, the amounts so received being credited to its surplus account or to a special account, such amounts do not constitute income, although there is no increase in the outstanding shares of stock of the corporation. In such a case the payments are in the nature of assessments upon, and represent an additional price paid for the shares of stock held by the individual shareholders and will be treated as an addition to and as a part of the operating capital of the company. Section 118 also applies to contributions to capital made by persons other than shareholders. For example, the exclusion applies to the value of land or other property contributed to a corporation by a governmental unit or by a civic group for the purpose of inducing the corporation to locate its business in a particular community, or for the purpose of enabling the corporation to expand its operating facilities. However, the exclusion does not apply to any money or property transferred to the corporation in consideration for goods or services rendered, or to subsidies paid for the purpose of inducing the tax-

in pertinent part, as follows (without the underlined language):

"*In general*, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation *to the extent of the principal of the debt*."

In 1938 the Regulations were amended by the insertion of the above underlined language, and they have remained unchanged since 1938 and are currently designated as Treasury Regulations on Income Tax, Section 1.61–12(a). The argument of the Commissioner, with respect to this amended Regulation will be discussed below.

The Commissioner argues, in effect, that the tax-benefit rule should be applied "across the board" in every case, including the one before us, where an expense item (interest here) has been deducted but not paid by a taxpayer (Putoma and Pro-Mac here), and recovered in a later year (when Hunt cancelled the interest) must be restored to taxable income of the taxpayers during the year of recovery, regardless of the circumstances. We do not agree.

In this regard, the Government states in its brief:

"Indeed, it is well established that the tax-benefit rule has general application in all areas of the tax law. Thus, it has been held applicable to the recovery of previously expensed bad debts (*Home Savings & Loan Ass'n v. United States*, 514 F.2d 1199 (C.A.9, 1975), cert. denied, 423 U.S. 1015 [96 S.Ct. 449, 46 L.Ed.2d 386] (1975); *Merchants Nat. Bank v. Commissioner*, 199 F.2d 657 (C.A.5, 1952); *Citizens Federal S. & L. Ass'n of Cleveland v. United States*, 290 F.2d 932 [154 Ct.Cl. 305] (Ct.Cl., 1961)); recovery with respect to securities written off as worthless (*Dobson v. Commissioner*, 321 U.S. 231 [64 S.Ct. 495, 88 L.Ed. 691] (1944)); recovery of taxes previously deducted (*Union Trust Co. v. Commissioner*, 111 F.2d 60 (C.A.7, 1940), cert. denied, 311

U.S. 658 [61 S.Ct. 12, 85 L.Ed. 421] (1940)); reimbursements for guaranty and legal payments (*Goodman v. Helvering*, 115 F.2d 242 (C.A.2, 1940)); recoupment of losses under construction contracts (*Burnet v. Sanford & Brooks Co.*, 282 U.S. 359 [51 S.Ct. 150, 75 L.Ed. 383] (1931)); insurance recoveries in subsequent years (*Volspar Corp. v. Commissioner*, T.C. Memo Op. Dkt 7621 (1946); *Zeeman v. United States*, 275 F.Supp. 235 (S.D.N.Y., 1967), aff'd and remanded, 395 F.2d 861 (C.A.2, 1968)). Further, the tax-benefit rule has been held to require that previously expensed items which are sold or disposed of for value in a later taxable period in connection with a corporate liquidation must be included in income. See *Commissioner v. Anders*, 414 F.2d 1283 (C.A.10, 1969); *Anders v. United States*, 462 F.2d 1147 [199 Ct.Cl. 1] (Ct.Cl., 1972); *Spitalny v. United States*, 430 F.2d 195 (C.A.9, 1970)."

■ Without discussing these cases in detail, suffice it to say that it is obvious that they do not involve the same facts that we have in the instant case, such as a gift and a contribution to a corporation's capital, and are clearly distinguishable. The tax-benefit rule is one that has been created by the judiciary, except to the extent some parts of it have now been included in the Treasury Regulations cited above. Such a judicially created rule cannot supercede and take precedence over the statutes enacted by Congress, such as 26 U.S.C.A., Sections 102, 111, and 118 quoted above.

■ We acknowledge that the tax-benefit rule is viable and may be applied in a proper case. In fact, we used it in *Mayfair Minerals, Inc. v. C. I. R.*, 456 F.2d 622 (5 Cir. 1972) where the taxpayer, a utility company, accrued and deducted amounts representing refunds due its customers. The company's liability to make the refunds was subsequently cancelled and the Commissioner determined that under the tax-benefit rule the previously deducted amounts had

payer to limit production. See section 362 for the basis of property acquired by a corporation through a contribution to its capital by its

stockholders or by nonstockholders. [Reg. § 1.118–1.]

to be restored to the taxpayer's income. This Court agreed, saying:

> "When an accrual basis taxpayer accrues an expense and offsets it against taxable income, and subsequently the expense is not paid, the amount of the prior deduction must be restored to income in the year the liability is extinguished. *Rothensies v. Electric Storage Battery Co.*, 1946, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 * * *. Taxpayer, having received the prior tax benefits from the accrued deductions, realized income in 1961. *Bear Manufacturing Co. v. United States*, 7 Cir. 1970, 430 F.2d 152, cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 632." 456 F.2d 623.

The Government relies heavily on the *Mayfair Minerals* case here and contends that it should control our decision in the instant case. We do not agree. That case is clearly distinguishable as it did not involve a gift within the meaning of the Code nor a contribution to the capital of the corporation.

The Government also relies on *Alice Phelan Corporation v. United States*, 381 F.2d 399, 401–2, 180 Ct.Cl. 659, 663 (1967), decided by the Court of Claims, in which the court held:

> "Yet the principle is well engrained in our tax law that the return or recovery of property that was once the subject of an income tax deduction must be treated as income in the year of its recovery. *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946); *Estate of Block v. Commissioner*, 39 B.T.A. 338 (1939), aff'd sub nom. *Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir.), cert. denied, 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940)."

In that case the Alice Phelan Corporation conveyed certain real estate to a donee for religious or educational purposes and claimed a charitable deduction from its income tax. Years later the donee decided not to use the gifts and returned the property. The Commissioner and the Court of Claims required the Alice Phelan Corporation to include the value of the property in its income in the year it was returned.

Here again, the case is distinguishable from our case. There, when the donee returned the property, it was not done with the intention, purpose or motive to make a gift to the donor within the meaning of the Code. The donee returned the property for the simple reason that it had decided not to use it and did not need it. Being a religious and educational entity, the donee no doubt concluded that it would be right and proper to return the property to the donor from whence it came. Furthermore, the donee had no intention, motive or purpose to contribute to the capital of the Alice Phelan Corporation. As far as the record shows in that case, the donee had no knowledge of the capital structure of the corporation and never considered nor intended to contribute to its capital. It simply returned property it did not need. Under these circumstances, the Commissioner and the Court of Claims were correct in requiring the corporation to restore the value of the property to its income in the year of its recovery.

The leading case in this area of the law is *Helvering v. American Dental Co.*, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785 (1943). That case and its progeny are dispositive of the instant case and will be discussed below.

Prior to the *American Dental Company* case, the Second Circuit Court of Appeals had occasion to consider some of the problems involved here in the case of *C. I. R. v. Auto Strop Safety Razor Co., Inc.*, 74 F.2d 226 (2 Cir. 1934), and in *Carroll-McCreary Co., Inc. v. C. I. R.*, 124 F.2d 303 (2 Cir. 1941). In the *Auto Strop Safety Razor Co.* case a shareholder and creditor of a corporation cancelled the debt of the corporation, which kept its books on an accrual basis, and the amount of the cancelled debt was credited to the surplus account of the corporation. The Commissioner added this amount to the income of the corporation. The Tax Court (then the Board of Tax Appeals) reversed the Commissioner, which reversal was affirmed by the court. The court said:

> "Article 49 of Regulations 69 which went into effect under the Revenue Act of 1918 substantially as it is quoted below and has so been continued reads:

'Art. 49. Forgiveness of Indebtedness—The cancellation and forgiveness of indebtedness may amount to a payment of income, to a gift, or to a capital transaction, dependent upon the circumstances. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income to that amount is realized by the debtor as compensation for his services. If, however, a creditor merely desires to benefit a debtor and without consideration therefor cancels the debt, the amount of the debt is a gift from the creditor to the debtor and need not be included in the latter's gross income. *If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation.*'

"The Board found that the sole stockholder of the Auto Strop Safety Razor Company acted gratuitously in forgiving the debt, and, as there was evidence to support the finding, we accept it. It held correctly in accordance with the above regulation that by the transaction, being a contribution to its capital, the Auto Strop Safety Razor Company did not receive taxable income." 74 F.2d 226 (Emphasis supplied).

In *Carroll-McCreary v. C. I. R.*, supra, the Second Circuit Court held that the cancellation by officer-shareholders of salaries owed to them by an accrual basis corporation and deducted by it in prior years was a contribution to its capital by the officer-shareholders and was not income to the corporation in a subsequent year when the debt was cancelled. In so holding, the court stated:

"Article 24(a)–14 of Regulation 86, promulgated under the Revenue Act of 1934, is set out in the margin.[1] The petitioner

[1] Regulations 86. "Art. 22(a)–14. Cancellation of indebtedness.—The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his serv-ices. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. (See Article 22(a)–18.) If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation. Income is not realized by a taxpayer by virtue of an adjudication in bankruptcy, or by virtue of a composition agreement among his creditors if immediately thereafter the taxpayer's liabilities exceed the value of his assets."

Similar provisions have been in effect since Regulations 62, Art. 50, Act of 1921; Reg. 65, Art. 49 (1924); Reg. 69, Art. 49 (1926); Reg. 74, Art. 64 (1928); Reg. 77, Art. 64 (1932).

relies upon that provision of the article which says that 'If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation.' *Contributions to capital are, of course, not taxable as corporate income.* But the Board held that income was realized by the petitioner since the case at bar falls outside the scope of the Regulation. This conclusion was reached on the ground that forgiveness of the debt for the unpaid salaries was not gratuitous because the officer shareholders obtained advantages 'in furthering the life of the company as accomplished by the agreement providing for the cancellation.' Such a construction of the Regulation deprives it of any function whatever; for an indirect benefit of this character always results to the shareholder from a gift to his corporation. At least, this is true if the corporation is a going concern or if the gift enables it to continue in business even though insolvent. In our opinion the phrase 'gratuitously forgives the debt' means simply that no consideration is paid by the corporation for release of the debt. We find nothing in *Helvering v. Jane Holding Corp.*, 8 Cir., 109 F.2d 933, conflicting with this interpretation. The Board's order cannot be supported on the ground that release of the debts was not 'gratuitous'; it was.

" . . . *Article 24(a)–14 states broadly that a debt gratuitously forgiven by a shareholder is considered a contribu-*

tion to capital. There is nothing in the language of the Article to suggest the Commissioner's limited construction that the Article is not to apply if the debts or items of expense they represent, have been used to decrease the corporation's income taxes in the prior years. That consideration we said in *Commissioner v. Auto Strop Safety Razor Co.*, 2 Cir., 74 F.2d 226, 227, is foreign to the question of determining whether the release of a debt amounts to a contribution to capital. Moreover, if release by a shareholder-creditor is to be considered income in case the released debt has been used to reduce taxable income in a prior year, the same result should follow when bankruptcy discharges a claim for interest, wages or business expense deducted from gross income; yet the Regulation states clearly that income is not realized by a taxpayer by virtue of the discharge of his indebtedness in bankruptcy. *We adhere to our decision in the Auto Strop case and hold that under the Regulation the petitioner at bar realized no income from the gratuitous cancellation of the debts for unpaid salaries owing to its officer shareholders.*

This conclusion is not at variance with the actual decision in *Helvering v. Jane Holding Corp.*, 8 Cir., 109 F.2d 933. As Judge Woodrough noted, at page 942, of 109 F.2d, this case is distinguishable from our *Auto Strop* decision because in the case before him the cancellation of the debt was not gratuitous and improvement of the capital structure was not the moving consideration for the cancellation. In so far as the opinion contains dicta contrary to the construction we have given the Regulation, we must respectfully disagree with them." 124 F.2d 304, 305. (Emphasis supplied).

We now come to the case of *Helvering v. American Dental Co., supra.* In that case an accrual basis corporation owed interest on notes and also back rent which it had deducted from its income prior to 1936. In 1937 the note holders cancelled the interest and the landlord cancelled a part of the back rent. The Commissioner ruled that such cancellations resulted in income to the corporation in 1937 and assessed a deficiency. The court of appeals reversed on the ground that the cancellations were exempt gifts (128 F.2d 254). The Supreme Court affirmed the decision of the court of appeals. As to the item of cancelled interest, the case was practically on "all fours" with the case before us. The Supreme Court held that the cancellation of the interest and a part of the rent was a gratuitous contribution to the capital of the corporation, and, therefore, a gift that was nontaxable. The court said:

"Where a stockholder gratuitously forgives the corporation's debt to himself, the transaction has long been recognized by the Treasury as a contribution to the capital of the corporation. Regulations 45, Art. 51, through to Regulations 94, Art. 22(a)–14. *Commissioner [of Internal Revenue] v. Auto Strop Safety Razor Co.* (CCA 2d) 74 F.2d 226.[8]

[8] For discussions of the general problem see 'The Revenue Act of 1939 and the Income Tax Treatment of Cancellation of Indebtedness,' 49 Yale L.J. 1153; 'Cancellation of Indebtedness and Its Tax Consequences,' 40 Col[umbia] L.Rev. 1326; 'Discharge of Indebtedness and the Federal Income Tax,' 53 Harvard L.Rev. 977.

* * * * *

"Gifts, however, is a generic word of broad connotation, taking coloration from the context of the particular statute in which it may appear. Its plain meaning in its present setting denotes, it seems to us, the receipt of financial advantages gratuitously.

* * * * *

"The Board of Tax Appeals decided that these cancellations were not gifts under § 22(b)(3). It was said:

'No evidence was introduced to show a donative intent upon the part of any creditor. The evidence indicates, on the contrary, that the creditors acted for purely business reasons and did not forgive the debts for altruistic reasons or out of pure generosity.' 44 B.T.A. 425, 428.

"With this conclusion we cannot agree. We do not feel bound by the finding of

the Board because it reached its conclusions, in our opinion, upon an application of erroneous legal standards. Section 22(b)(3) exempts gifts. This does not leave the Tax Court of the United States free to determine at will or upon evidence and without judicial review the tests to be applied to facts to determine whether the result is or is not a gift. The fact that the motives leading to the cancellations were those of business or even selfish, if it be true, is not significant. *The forgiveness was gratuitous, a release of something to the debtor for nothing, and sufficient to make the cancellation here gifts within the statute.* Affirmed." 318 U.S. 328, 330, 63 S.Ct. 580, 87 L.Ed. 790, 791. (Emphasis supplied).

As shown above, the court held that the plain meaning of the word "gifts" denotes "the receipt of financial advantages gratuitously" and is a "forgiveness" or "release of something to the debtor for nothing."

The Supreme Court changed somewhat its concept of the meaning of the word "gifts" in the tax laws and regulations in the case of *C. I. R. v. Jacobson*, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949). In that case a natural person had issued bonds at face value and later bought them at a discount from various holders. The question was whether the discounted savings were gifts and non-taxable or were taxable as income to him. The court held that there was no "intent" on the part of the sellers to make gifts nor any intent on their part to "transfer or release something for nothing", and, therefore, the gain was not a gift and was taxable to the taxpayer in the tax year in which he made the purchases. The court said:

"The only provision for the exclusion of these types of gains from the respondent's gross income that is presented for our consideration is the general exception of gifts from taxation prescribed by § 22(b)(3). This was applied by this Court in favor of a taxpayer in *Helvering v. American Dental Co.*, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, as well as by the court below in the instant case. Both the

general provision for taxation of income and this provision for the exclusion of gifts from gross income, for income tax purposes, have been in the Federal Income Tax Acts in substantially their present form since the Revenue Act of 1916."

.        .        .        .        .

"The facts and findings in this case do not establish any such intent of the seller to make a gift in contradiction of the natural implications arising from the sales and assignments which he made."

.        .        .        .        .

"The situation in each transaction is a factual one. It turns upon whether the transaction is in fact a transfer of something for the best price available or is a transfer or release of only a part of a claim for cash and of the balance 'for nothing.' The latter situation is more likely to arise in connection with a release of an open account for rent or for interest, as was found to have occurred in *Helvering v. American Dental Co. (U.S.)* supra, than in the sale of the outstanding securities, either of a corporation as described in § 22(b)(9), or of a natural person as presented in this case. For these reasons we hold that the Commissioner was justified in finding a taxable gain, rather than an exempt gift, in each of the transactions before us. The judgment of the Court of Appeals accordingly is reversed and the cause is remanded for further action in accordance with this opinion.

It is so ordered."

336 U.S. 47, 51–52, 69 S.Ct. 368, 370, 93 L.Ed. 488, 490.

By this decision, the Supreme Court established the principle that in order for financial gain resulting from a transfer of property, or the cancellation of a debt, to be an exempt gift and non-taxable to the recipient, there must have been an intent on the part of the party making the transfer or cancellation to make a gift. In other words, the mere fact that it was gratuitous is not enough. The court also pointed out

that "the situation in each [case] is a factual one."

The Supreme Court further amplified the meaning of the word "gift" in the tax laws and regulations, and laid down guidelines that may be followed in determining whether a transaction is a gift, in the case of *C. I. R. v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In that case a corporation transferred a Cadillac automobile to a taxpayer who had supplied the corporation with the names of potential customers for its products. The question in the case was whether the transfer was a non-taxable gift to the taxpayer. The court held that it was not a gift, but was payment for the taxpayer's services or an inducement for him to be of further service in the future.

In disposing of the case, the court refused to promulgate a new "test" as to what is or is not a gift. However, it did hold that the term "gift" is not used in the statute in the common-law sense, but in a more colloquial sense. The court stated that a transfer of property without consideration, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. The court held further that the most critical consideration is the transferor's "intention" or basic reason—the dominant reason—for making the transfer. All of the factors must be considered by the trier of facts in each case to determine whether a transfer amounts to a "gift". Where the trial is held by a judge, his findings must stand unless clearly erroneous. In so holding, the Supreme Court said:

> "The meaning of the term 'gift' as applied to particular transfers has always been a matter of contention. Specific and illuminating legislative history on the point does not appear to exist. Analogies and inferences drawn from other revenue provisions, such as the estate and gift taxes, are dubious. See *Lockard v. Commissioner* (CA1) 166 F.2d 409. The meaning of the statutory term has been shaped largely by the decisional law."

.     .     .     .     .

> "The Government suggests that we promulgate a new 'test' in this area to serve as a standard to be applied by the lower courts and by the Tax Court in dealing with the numerous cases that arise. We reject this invitation. We are of opinion that the governing principles are necessarily general and have already been spelled out in the opinions of this Court and that the problem is one which, under the present statutory framework, does not lend itself to any more definitive statement that would produce a talisman for the solution of concrete cases."

.     .     .     .     .

> "The course of decision here makes it plain that the statute does not use the term 'gift' in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntarily executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a 'gift' within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 730, 49 S.Ct. 499 [, 504, 73 L.Ed. 918, 928]. And, importantly, if the payment proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature, *Bogardus v. Commissioner*, 302 U.S. 34, 41, [58 S.Ct. 61, 65, 82 L.Ed. 32, 37,] it is not a gift. And, conversely, '[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.' *Robertson v. United States*, 343 U.S. 711, 714, [72 S.Ct. 994, 996, 96 L.Ed. 1237, 1240]. A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity.' *Commissioner [of Internal Revenue] v. Lo Bue*, 351 U.S. 243, 246 [, 76 S.Ct. 800, 803, 100 L.Ed. 1142, 1147]; 'out of affection, respect, admiration, charity or like impulses.' *Robertson v. United States*, supra 343 U.S. at page 714, [72 S.Ct. 994 at page

996]. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's 'intention.' *Bogardus v. Commissioner*, 302 U.S. 34, 43, [58 S.Ct. 61, 65, 82 L.Ed. 32, 38]. 'What controls is the intention with which payment, however, voluntary, has been made.'"

.     .     .     .     .

"We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact—the dominant reason that explains his action in making the transfer. Further than that we do not think it profitable to go.   .   .   .   The conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors."

.     .     .     .     .

"Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case."

.     .     .     .     .

".   .   .   primary weight in this area must be given to the conclusions of the trier of fact."

.     .     .     .     .

"But the question here remains basically one of fact, for determination on a case-by-case basis."

.     .     .     .     .

"Where the trial has been by a judge without a jury, the judge's findings must stand unless 'clearly erroneous.' Fed. Rules Civ.Proc. 52(a) [28 U.S.C.A.]."

.     .     .     .     .

"A majority of the Court is in accord with the principles just outlined. And, applying them to the *Duberstein* Case, we are in agreement, on the evidence we have set forth, that it cannot be said that the conclusion of the Tax Court was 'clearly erroneous.' It seems to us plain that as trier of the facts it was warranted in concluding that despite the characterization of the transfer of the Cadillac by the parties and the absence of any obligation, even of a moral nature, to make it, it was at bottom a recompense for Duberstein's past services, or an inducement for him to be of further service in the future." 363 U.S. 284, 285–286, 288, 289, 290, 291–292, 80 S.Ct. 1196–1197, 1198–1199, 1200, 4 L.Ed.2d 1224, 1225, 1226, 1227, 1228.

While the definition of a "gift" as stated in *American Dental Co.* case was modified somewhat in the case of *Commissioner v. Jacobson*, that case cited the *American Dental Co.* case with approval, and the latter case cited *Commissioner v. Auto Strop Safety Razor Co., supra,* with approval. Suffice it to say, *American Dental* has continued to be a leading case that precludes taxation of cancelled debts that have been deducted previously, in situations similar to the facts in the instant case. In *Reynolds v. Boos*, 188 F.2d 322 (8 Cir. 1951) back rent had been cancelled for a lessee who had previously deducted it. Relying on *American Dental*, the court held that the item was non-taxable as a gift, saying:

"The Supreme Court specifically said in *Dobson v. Commissioner of I. R.*, 320 U.S. 489, 506, 64 S.Ct. 239, 249, 88 L.Ed. 248, *"We are not adopting any rule of tax benefits."* And, in any event, the *American Dental Co.* case, supra, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, makes clear that the *tax-benefit argument has no place in the present situation.* In that case, the identical situation of alleged tax benefits existed as in our case. The opinion of the Supreme Court noted 318 U.S. at page 323, 63 S.Ct. at page 578, that 'This back rent had been accrued as an expense', but it nevertheless held that the subsequent cancellation had constituted a gift and so could not be taxed as income. See also *American Dental Co. v. Commissioner of I. R.*, 7 Cir., 128 F.2d 254. We are aware of no departure by the Supreme Court from that position in a gift situation." 188 F.2d 326. (Emphasis supplied).

See also *Commissioner v. Fender Sales*, 338 F.2d 924 (9 Cir. 1964); *Utilities & Industries Corp.*, 41 T.C. 888 (1964); *Hartland Associates*, 54 T.C. 1580 (1970); *George Hall Corp.*, 2 T.C. 146 (1943); *Pancoast Hotel Co.*, 2 T.C. 362 (1943); *McConway & Torley Corp.*, 2 T.C. 593 (1943); and *Midland Tailors*, 2 T.C.M. 281 (1943).

The Commissioner argues that since the amendment of Treasury Regulation 101, Art. 22(a)–14, (1938 Revenue Act), (Now Regulation 1.61–12), effective January 1, 1938, the contribution to the capital of a corporation by the gratuitous cancellation of a previously deducted debt by a shareholder extends or applies only to the *principal* of the debt and not to the interest. The Commissioner has made this argument in many cases, but it was rejected in the *Auto Strop* case and in the *Carroll-McCreary* case. Only one circuit court of appeals has agreed with the argument, namely the 8th Circuit Court in the case of *Helvering v. Jane Holding Corporation*, 109 F.2d 933 (8 Cir. 1940), but Judge Woodrough who wrote the opinion in that case himself distinguished it from the *Auto Strop Safety Razor Co.* case as follows:

"The Board of Tax Appeals to sustain its conclusion against the tax in this case relied upon the decision of the Court of Appeals of the Second Circuit, *Commissioner v. Auto Strop Razor Company*, 74 F.2d 226, 227. In that case the court sustained a finding made by the Board of Tax Appeals that a debt owing by the taxpayer corporation to its sole stockholder had been gratuitously forgiven. The court held that the Regulation (identical with 77, Article 64, supra), should be applied and that in accordance with the regulation the taxpayer did not receive taxable income. It also clearly appeared in the case that in fact the purpose of the forgiveness of the taxpayer's debt was to improve its capital structure and that a contribution to capital was intended. To the extent that the decision was rested on the regulation, and the established intent to improve the capital structure, *the case is to be distinguished from the present case, because in this case the cancellation*

*of the debt was not gratuitous and it is evident here that improvement of capital structure was not the moving consideration for the cancellation.*" 109 F.2d 942. (Emphasis supplied).

In commenting on this argument of the Commissioner, the Tax Court held in *Midland Tailors, supra*:

"Respondent's position is simply that the transaction was not the payment of a voluntary assessment upon stock in petitioner under the first cited Regulation, but a forgiveness of indebtedness to its three shareholders by petitioner which resulted in the realization of income to petitioner under the cited Regulation since, he argues, it was not the forgiveness of a principal debt.

"The italicized words of the Regulation quoted in the margin were added as of January 1, 1938. Respondent urges that the Regulation as it formerly appeared should be construed as it now reads. But, in any event it is argued that its import, as changed and effective during the taxable year, renders taxable the forgiveness of the indebtedness here for accrued and unpaid salaries from petitioner to its shareholders.

"In the recent opinion of this Court in *George Hall Corp.*, 2 T.C. 146 [Dec. 13, 1941], it was held that 'as a legal proposition' the voluntary cancellation of debenture interest by a debenture holder, who was also a stockholder, was a gift and thus not taxable income to the recipient corporation, upon the authority of *Helvering v. American Dental Co.*, 318 U.S. 322 [63 S.Ct. 577, 87 L.Ed. 785] [43–1 USTC # 9318]. In that Opinion of this Court it was added that 'The fact that the regulations may give ground for calling it also a contribution of capital, cf. *Carroll-McCreary Co. v. Commissioner*, 124 F.2d 303 [42–1 USTC ¶ 9183], does not affect the decision.'

"Since there is no difference, at least for present purposes, between the facts here and those in the *Hall* case, supra, we follow the precedent there established and reverse the respondent in his contested determination." 2 TCM 284.

■ While we realize that the present regulation (1.61–12) does limit the cancelled debt to the principal, we consider it merely as the Commissioner's interpretation of the statutes, which is not binding on us and with which we do not agree. We find nothing in the statutes that authorizes such a limitation.

When the requirements set forth in the *American Dental, Jacobson,* and *Duberstein* cases for a non-taxable gratuitous gift to a person or corporation, or a gratuitous contribution to the capital of a corporation, are considered and applied to the facts of the instant case, we find and conclude that such requirements have been met by Hunt, Putoma and Pro-Mac. This is true whether the cancellation of the interest by Hunt is considered to be a gift within the meaning of Section 102 of the Code, or is held to be a contribution to the capital of the corporations within the meaning of Section 118 of the statute, or both. The findings of fact by the Tax Court support this conclusion.

The Tax Court found that Putoma and Pro-Mac were in the business of making parts for the F–111 airplane for the Government. In 1969 the F–111 program was sharply curtailed and as a result Putoma and Pro-Mac suffered severe decline in their sales. In order to reflect a better financial condition to creditors and potential lenders, Hunt and Purselley cancelled corporate salaries and bonuses owed to them, and Hunt cancelled interest on notes owed to him by the corporations. This was done at the request of the corporations. When Hunt cancelled the interest he made a gratuitous contribution of the interest to the capital of the corporations without consideration.

It is evident from these findings that Hunt intended to contribute to the capital of the corporations by making a gift to them of the cancelled interest; that the dominant reason for his doing so was to improve their financial condition; that the cancellation was voluntary, gratuitous, and without consideration or payment of any kind to him; and that there was no *quid pro quo* given nor received for such cancellation.

The Tax Court held that Hunt made a contribution to the capital of the corporations when he cancelled the interest, and that the tax-benefit rule was not applicable, and the corporations were not required to include the cancelled interest in their income in the taxable year of its cancellation. We agree.

■ We hold that under the facts of this case Hunt made a gift to the corporations within the meaning of Section 102 by contributing to their capital within the meaning of Section 118 of the Internal Revenue Code (26 U.S.C.A. §§ 102 and 118) when he cancelled the interest. We hold further that the tax-benefit rule is not applicable and is superceded in this case by the above Sections of the Code. Consequently, Putoma and Pro-Mac were not required to include the cancelled interest in their gross income in the taxable year of its cancellation.

The judgment of the Tax Court is affirmed.

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, dissenting in part:

I concur with my brethren in affirming the decision of the Tax Court disallowing any corporate deduction for accrued salaries forgiven by the individual taxpayers. I must respectfully disagree with their decision in Part II that the cancellation of corporate indebtedness for interest payable to Mr. Hunt constituted a contribution to capital and was thus not taxable to the corporation.

The tax benefit rule is a simple precept based on economic reality: when a taxpayer takes a deduction for an expense in one year, and then in a later year the amount is either not paid or, having been paid, is recouped, the amount of the deduction must be restored to the taxable income of the taxpayer in the later year. We deal here with the inherent tension between that patently sound rule and the explicit exemption of capital contributions from the taxable

income of corporate taxpayers contained in the Internal Revenue Code, 26 U.S.C. § 118(a). The appellee corporations have deducted the accrued interest payable to Mr. Hunt, thereby gaining a tax benefit, but they have never paid it. If the cancellation of the debt they owe for this interest does not result in taxable income to the corporations, they have in effect taken a deduction for an expense that will never be paid,[1] but Mr. Hunt will never report any of this sum as interest income.[2] An income tax deduction will have been realized for a fictitious expense.

Once upon a time, more than 40 years ago, the Commissioner appeared to countenance this anomalous result. In defining a contribution to corporate capital, the Regulations in effect from 1918 to 1939 [3] provided, in part:

If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation.

Interpreting this regulation, the Second Circuit early and consistently concluded that any gratuitous cancellation of a debt, even one consisting of accrued interest, constituted a contribution to capital and was nontaxable, despite the Commissioner's appeals to the tax benefit rule. *See Carroll-McCreary Co. v. Commissioner,* 2 Cir. 1941, 124 F.2d 303; *Commissioner v. Auto Strop Safety Razor Co.,* 2 Cir. 1934, 74 F.2d 226. The Eighth Circuit interpreted the regulation somewhat more narrowly, concluding that only principal, not accrued interest, was shielded from tax impact on the corporation. *Helvering v. Jane Holding Corp.,* 8 Cir. 1940, 109 F.2d 933, *cert. denied,* 310 U.S. 653, 60 S.Ct. 1102, 84 L.Ed. 1418 (dictum).

In 1938 the Commissioner altered the regulation to make clear that the interest portion of a cancelled corporate debt was taxable to the extent of any prior tax benefit to the corporation. *See* Rev.Rul. 73–432, 1973–2 Cum.Bull. 17. As amended, the regulation (now Regulation § 1.61–12(a)) provides, in part:

In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt.

That this modification in the regulation had little initial effect on the course of judicial decisions is likely attributable to the Supreme Court's decision in *Helvering v. American Dental Co.,* 1943, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785. While the case is analogous, unlike the majority, I must conclude that it is distinguishable from this one both on its facts and on the issues faced. In *American Dental* the Court considered the taxability of accounts cancelled by non-shareholder creditors of a corporation that arose out of expenses for rents and interest. The Commissioner agreed that the only issue before the Court was whether the forgiveness was a gift; if so, he conceded that it was excludable from corporate income. The Court decided as matter of law that the cancellation was a gift. The fact that a prior tax benefit had been obtained—not pressed by the Commissioner in that case—did not motivate the Court to exclude the transaction from the category of a "gift" within the meaning of the Code.

*American Dental* could not possibly have involved a contribution to corporate capital

---

1. This is not the same treatment normally accorded a contribution to capital; when a taxpayer receives a capital contribution, it does not usually gain a tax deduction thereby.

2. The Tax Court rejected the Commissioner's contention that, if the forgiven indebtedness was not recognizable income to the corporation, it was includable in the gross income of Mr. Hunt. Although this issue was also appealed, the Commissioner subsequently abandoned the claim.

3. *See, e.g.,* Treasury Regulations 62, Art. 50 (1921); Treasury Regulations 65, Art. 49 (1924); Treasury Regulations 69, Art. 49 (1926); Treasury Regulations 74, Art. 64 (1928); Treasury Regulations 77, Art. 64 (1932); Treasury Regulations 86, Art. 22(a)–14 (1934); Treasury Regulations 94, Art. 22(a)–14 (1936); Treasury Regulations 101, Art. 22(a)–144 (1938).

because the forgiveness did not emanate from stockholders; nevertheless, the opinion did mention the following as an example of transactions exempt from taxation:

> Where a stockholder gratuitously forgives the corporation's debt to himself, the transaction has long been recognized by the Treasury as a contribution to the capital of the corporation. [citing *Commissioner v. Auto Strop Safety Razor Co., supra.*]

318 U.S. at 328, 63 S.Ct. at 580. *American Dental* was decided in 1943, and involved a 1937 transaction; it was easy for the court to overlook, in discussing an issue not argued, the 1938 change in the regulation.

Nonetheless, following *American Dental,* courts continued to find gratuitous cancellations of corporate indebtedness, including both principal and interest, to be nontaxable gifts. *See, e.g., McConway & Torley Corp. v. Commissioner,* 1943, 2 T.C. 593; *Pancoast Hotel Co. v. Commissioner,* 1943, 2 T.C. 362; *George Hall Corp. v. Commissioner,* 1943, 2 T.C. 146. *Cf. Reynolds v. Boos,* 8 Cir. 1951, 188 F.2d 322 (forgiveness of rental indebtedness by lessor). The fact that such gifts might be considered contributions to capital, and therefore subject to the amended regulation, had no impact on the decisions. In these cases and others, confronted with what superficially appeared to be precedent establishing the nontaxability of gratuitous forgiveness of corporate indebtedness, the courts applied *American Dental* to exempt cancellation of both principal and interest debts as contributions to capital, thus going further than the gift-to-the-corporation situation.

Two of these cases can be explained on other grounds. In *Utilities & Industries Corp. v. Commissioner,* 1964, 41 T.C. 888, *rev'd on other grounds sub nom. The South Bay Corp. v. Commissioner,* 2 Cir. 1965, 345 F.2d 698, the nontaxability of the discharge of indebtedness was also required by bankruptcy regulations. No tax benefit was gained by the company in *Commissioner v. Fender Sales, Inc.,* 9 Cir. 1964, 338 F.2d 924, because the accrued, unpaid offi-

cers' salaries were discharged in exchange for common stock of equal market value on which the officers were taxed, and the court did not find itself compelled to decide whether there had been a contribution to capital.

The only such case that actually presented the issue we face here is *Hartland Associates v. Commissioner,* 1970, 54 T.C. 1580. The Tax Court there stated:

> The nontaxability of the gratuitous cancellation of an indebtedness applies equally to the principal and interest portions of the indebtedness. . . . It is of little consequence in determining the result of the cancellation of interest indebtedness that the interest had been deducted by the debtor in prior years. The imposition of tax liability on the basis of prior tax benefits has been uniformly rejected by the courts in the case of gratuitous forgiveness of a debt. . . . Sections 102 and 118, which govern taxability of such cancellations, will not be overridden by the abstract notion of tax benefit. [54 T.C. at 1585–86.]

I think that the Tax Court and my brethren here have failed to apprehend the distinction between gift cases, such as *American Dental,* and capital contribution cases. I would agree that *gifts* to corporations are nontaxable under the Internal Revenue Code, 26 U.S.C. § 102, to the full extent of principal *and* interest. The regulations defining a "gift" do not compel a different conclusion. However, Putoma does not contend—nor did the Tax Court decide—that the transaction here was a gift. This case involves an alleged *contribution to capital,* pure and simple. If the corporation has previously obtained a tax benefit by virtue of its accrual system of accounting, and later secures a release of its obligation to incur the expenses accrued, such a cancellation of indebtedness constitutes a contribution to capital in the tax sense only to the extent of the principal of the debt, as the regulations clearly provide; any debt for interest eliminated in the transaction must

be recognized as income unless it is exempt on another theory.[4]

The result reached by the Tax Court in *Hartland Associates* and in this case makes the regulation meaningless verbiage. Neither of the litigants contends that Regulation § 1.61–12(a) is invalid.[5] It is our duty to effectuate its intent. To hold, as do my brethren, that it is "merely . . . the Commissioner's interpretation of the statutes, which is not binding on us and with which we do not agree," is to ignore the legal effect of regulations adopted by the Commissioner under the Internal Revenue Code and long continued without substantial change. *See, e.g., Green v. United States,* 5 Cir. 1972, 460 F.2d 412, 417 n. 4. I would therefore reverse the Tax Court on the issue concerning cancellation of accrued interest and hold the corporations liable for tax on that amount.

---

**4.** One commentator has suggested that *Hartland Associates* makes sense only if the cancelled interest—on which the corporation was not taxed—was included in the income of the shareholders. I would, of course, agree that "[w]here an item of corporate expense is accrued but unpaid, its later forgiveness by a shareholder should not result in income to the corporation under the tax benefit rule where the shareholder, or someone from whom the shareholder has acquired the claim, has included the item in income." O'Hare, Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of Corporations and Shareholders, 27 Tax L.Rev. 215, 241, 243 (1972). *See, e.g., Carroll-McCreary Co. v. Commissioner,* 2 Cir. 1941, 124 F.2d 303.

In the absence of recognition by the individual shareholders forgiving accrued interest, sound fiscal policy demands that the company disgorge the tax benefit it previously received in the expectation that the tax burden would fall elsewhere. *See* Note, *Cancellation of Indebtedness and its Tax Consequences: I,* 50 Colum.L.Rev. 1326, 1359 (1940); *see generally*

Note, *Discharge of Indebtedness and the Federal Income Tax,* 53 Harv.L.Rev. 977, 995–97 (1940); Surrey, *The Revenue Act of 1939 and the Income Tax Treatment of Cancellation of Indebtedness,* 49 Yale L.J. 1153 (1940).

**5.** I do not consider the addition of 26 U.S.C. § 118 by the Internal Revenue Code of 1954 to be an implicit rejection of the tax benefit rule for corporate recoveries of accrued interest owed to shareholders, as Putoma suggests. Indeed, Congress knew that the Commissioner had, since 1938, interpreted the term "contribution to capital" as excluding the interest portion of a corporate debt. Had Congress found this interpretation unpalatable, it was free to define the term differently in the statute itself. It can, with some cogency, be argued that, in the absence of authoritative appellate decision construing the statute, Congress saw no need to deal with the regulation. However, the point is not that Congress implicitly indorsed the regulation, but that it certainly has not rejected it.