EDWIN E. LEWIS AND NELLIE E. LEWIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lewis v. Commissioner
Docket No. 22238-85
United States Tax Court
T.C. Memo 1989-491; 1989 Tax Ct. Memo LEXIS 494; 58 T.C.M. (CCH) 93; T.C.M. (RIA) 89491; September 7, 1989
Edwin E. Lewis, pro se. Scott Anderson, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies of $ 6,917 and $ 2,504, respectively, in petitioners' *496 1980 and 1981 Federal income taxes. The sole issue to be decided is whether respondent erred in disallowing claimed miscellaneous itemized deductions and determining petitioners were instead entitled to deductions under sections 165 and 166[1] in 1980. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Edwin E. and Nellie E. Lewis resided in Suffolk, Virginia, when they filed their petition. Petitioners filed joint Federal income tax returns for the years at issue. In 1963, petitioner Edwin E. Lewis (Mr. Lewis) founded Diversified Electronics, Inc. (Diversified), a Virginia corporation. When the corporation was formed, 630 shares of $ 10.00 par value stock were issued. This stock reflected Mr. Lewis's initial $ 6,300 investment in the corporation. Mr. Lewis retained 63 percent of the stock and split the remaining 37 percent among his minor children. *497 From 1963 until Diversified was dissolved in 1971, Mr. Lewis served as secretary and treasurer of the corporation. Petitioner Nellie E. Lewis served during that period as the unpaid president of Diversified. In 1967 or 1968, 100 additional shares of $ 10.00 par value stock were issued by Diversified. The 100 shares of stock issued in 1967 and 1968 were issued to employees of Diversified in lieu of bonuses. The stock issued to the employees was returned to the corporation by the employees in 1970. The business of Diversified was the repair of navigation, electronic, and ordnance equipment on U.S. Navy ships. In 1968, the gross income of the corporation was $ 500,000 and the corporation performed services for all major shipyards on the east and gulf coasts of the United States. In 1968, Mr. Lewis made a further investment of $ 15,000 in Diversified. One of Diversified's major customers was Commodore Industries, Inc., (Commodore) a holding company which owned and operated shipyards in Jacksonville, Florida, and Charleston, South Carolina. In 1969, Commodore defaulted on three or four contracts which it had entered into with Diversified. In June 1970, Diversified filed suit *498 in the U.S. District Court for the Eastern District of Virginia (Virginia District Court) against Commodore for breach of contract. The suit filed by Diversified sought $ 162,000 in actual damages and $ 1,500,000 in punitive damages as a result of the alleged breaches of contract by Commodore. After the suit was filed, a major portion of Diversified's cause of action was dismissed on jurisdictional grounds. The amount remaining in dispute exceeded $ 28,000. In November of 1970, as a result of the defaults by Commodore, Diversified ceased to conduct active business operations. In May of 1971, Mr. Lewis made a payment of $ 990.37 with respect to a debt of Diversified which he had personally guaranteed. In June of 1971, Diversified was notified by the Virginia State Corporation Commission that it had been dissolved for failure to file yearly statements as required by state law. On October 12, 1972, Diversified was awarded a judgment of $ 15,288, plus interest, against Commodore by the Virginia District Court. In 1973, Mr. Lewis, as trustee for Diversified, filed suit in the U.S. District Court for the Middle District of Florida (Florida District Court) against Commodore for the *499 breach of contract causes of action which had been dismissed by the Virginia District Court. This suit sought damages of approximately $ 147,000 in compensatory damages and $ 1,500,000 in punitive damages. Mr. Lewis spent $ 9,514.22 from 1973 to 1980 in pursuing the litigation against Commodore. The $ 9,514.22 included $ 2,200.00 for "litigation expenses" relating to the Virginia suit, attorneys' fees in the amount of $ 3,041.70, stationery and printing in the amount of $ 434.58, telephone and telegrams in the amount of $ 632.20, travel costs from Lewis's home in Suffolk, Virginia, to Jacksonville, Florida, in the amount of $ 3,029.08, and miscellaneous expenses in the amount of $ 176.66. Of the $ 9,514.22 paid by Mr. Lewis, $ 2,200 related to the Virginia District Court action and $ 7,314.22 related to the Florida District Court action. The rules of the Florida District Court required Mr. Lewis, as trustee of Diversified, to retain an attorney to represent him before the court. In September of 1973, Mr. Lewis and Nellie E. Lewis entered into a second mortgage on their home in Suffolk, Virginia, to obtain $ 22,350. The $ 22,350 was used to pay debts of Diversified which had *500 been personally guaranteed by Mr. Lewis. In 1980, the suit filed by Mr. Lewis against Commodore in the Florida District Court was dismissed with prejudice. Mr. Lewis, as trustee of Diversified, appealed the dismissal to the U.S. Court of Appeals for the Fifth Circuit. On October 15, 1980, the Fifth Circuit dismissed the appeal. On August 3, 1981, the Florida District Court ruled that it was without jurisdiction to consider Mr. Lewis's Motion for Appearance and Oral Argument and Motion for Reconsideration of a Prior Order. OPINION The sole issue to be decided is whether respondent erred in disallowing claimed miscellaneous itemized deductions and determining petitioners were instead entitled to deductions under sections 165 and 166 in 1980. Respondent disallowed petitioners' claimed miscellaneous itemized deductions of $ 33,055 in 1980 and $ 10,359.32 in 1981. Respondent determined that the amounts petitioners claimed as miscellaneous itemized deductions were actually part of Mr. Lewis's investment in Diversified and a bad debt arising from Mr. Lewis's payment of corporate obligations. Respondent determined that petitioners were entitled to a long-term capital loss deduction *501 for worthless securities under section 165 in 1980 and a short-term capital loss deduction for nonbusiness bad debts under section 166 in 1980. Petitioners' argument is incoherent and ambiguous. Petitioner apparently contends that Diversified had no existence for tax purposes after 1971 and that petitioners are therefore entitled to deduct various payments as miscellaneous itemized deductions. [2]Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a). We shall first decide whether petitioners proved that respondent's determination was incorrect with respect to the amount respondent determined was a long-term capital loss deductible under section 165. In his notice of deficiency, respondent determined that Mr. Lewis's initial $ 6,300 investment in Diversified, *502 his subsequent $ 15,000 investment in Diversified, and his payment of $ 9,514.22 in litigation expenses should be treated as capital investments. Petitioners failed to introduce evidence sufficient to prove that Mr. Lewis's investment in Diversified and his payment of litigation expenses were anything other than capital contributions. A shareholder's capital contributions cannot be deducted as miscellaneous itemized deductions, but must be added to the shareholder's basis in the stock. See sec. 1016; see also Kasle v. United States, 75 F. Supp. 341 (N.D. Ohio 1947). Consequently, we sustain respondent's disallowance of miscellaneous itemized deductions for Mr. Lewis's investment in Diversified and his payment of litigation expenses. Since we have sustained respondent's disallowance of miscellaneous itemized deductions for Mr. Lewis's capital contributions, we must decide whether respondent correctly determined that petitioners are entitled to a long-term capital loss deduction under section 165. Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. *503 Section 165(g) provides that "If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall * * * be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset." Respondent determined that Mr. Lewis's Diversified stock became worthless in 1980, when the Florida District Court dismissed Mr. Lewis's suit against Commodore with prejudice and the United States Court of Appeals for the Fifth Circuit dismissed Mr. Lewis's appeal. Although Diversified was dissolved in 1971, it retained valuable assets in the form of causes of action against Commodore. The Virginia District Court's 1973 judgment in favor of Diversified and Mr. Lewis's active pursuit of the Florida litigation show that these causes of action had value. When the Fifth Circuit affirmed the dismissal of the Florida causes of action in 1980, Diversified was left with no assets of value. As a result, Diversified's stock became worthless. Petitioners have failed to introduce evidence sufficient to prove that Diversified's stock did not become worthless in 1980. Consequently, petitioners *504 have not proved respondent erred in determining that the stock became worthless in 1980. The amount of loss when a security becomes worthless is the adjusted basis of the security. See Raymond v. United States, 511 F.2d 185, 189 (6th Cir. 1975); sec. 1001. The adjusted basis of a security is its basis determined under section 1011, adjusted as provided in section 1016. A shareholder's contributions to capital are added to the shareholder's basis in his stock. Sec. 1016; see Kasle v. United States, supra.Petitioners failed to introduce any evidence to prove that Mr. Lewis's investment in Diversified and his payment of litigation expenses were not capital contributions. Since petitioners failed to prove that Mr. Lewis's investment in Diversified and his payment of litigation expenses were not capital contributions, the amounts of his investment and litigation expenses must be added to Mr. Lewis's basis in his Diversified stock. Mr. Lewis made investments of $ 6,300 and $ 15,000 in Diversified and paid litigation expenses of $ 9,514.22, so his total *505 capital contribution was $ 30,814.22. Therefore, under sections 1011 and 1016, Mr. Lewis's adjusted basis in the Diversified stock when it became worthless was $ 30,814.22. The amount of petitioners' loss on the stock was therefore $ 30,814.22. Sec. 1001. Section 165(a) allows petitioners a deduction for the loss when the stock became worthless in 1980, but section 165(g) requires that petitioners' loss be treated as a loss from the sale or exchange of a capital asset. As Mr. Lewis held his Diversified stock for more than six months, loss on the sale or exchange of his Diversified stock would be long-term capital loss. Sec. 1222(4). Accordingly, we sustain respondent's determination that petitioners are entitled to a deduction under section 165 for a long-term capital loss of $ 30,814.22 in taxable year 1980. We next shall decide whether petitioners proved that respondent's determination was incorrect with respect to the amount respondent determined was a short-term capital loss deductible under section 166. Respondent determined that petitioners incurred nonbusiness bad debt losses in 1980 as a result of Mr. Lewis's payment of Diversified's debts which he had guaranteed. Petitioners *506 introduced no evidence that would prove that any of the amounts respondent determined were bad debt losses should be treated as miscellaneous itemized deductions. Accordingly, petitioners have failed to prove that respondent erred in disallowing petitioners' claimed miscellaneous itemized deductions for these amounts. To decide whether respondent correctly determined that petitioners are entitled to short-term capital loss deductions in 1980 under section 166, we must decide (1) whether a debt to Mr. Lewis existed; (2) whether that debt became worthless in 1980; and (3) whether the debt was business or nonbusiness. Upon payment by a guarantor of a debt, the debtor's obligation to the creditor becomes an obligation to the guarantor. Putnam v. Commissioner, 352 U.S. 82, 85 (1956). Mr. Lewis, as guarantor, paid Diversified's debts of $ 990.37 and $ 22,350. When Mr. Lewis paid Diversified's debts which he had guaranteed, Diversified became indebted to Mr. Lewis. Therefore, a debt existed from Diversified to Mr. Lewis. Respondent determined Diversified's debt to Mr. Lewis became worthless in 1980. Petitioners bear the burden of proving that respondent's determination *507 is incorrect. Rule 142(a). The debt from a debtor to a guarantor resulting from the guarantor's payment to a creditor is not a new debt but instead is the result of the shift of the original debt from the creditor to the guarantor. Putnam v. Commissioner, supra.Therefore, if the guarantor is unable to recover from the debtor, the guarantor's loss is a loss from the worthlessness of a debt. Putnam v. Commissioner, supra; Crown v. Commissioner, 77 T.C. 582, 597 (1981). Such a debt is deductible in the year in which it becomes wholly worthless. Bodzy v. Commissioner, 321 F.2d 331, 335 (5th Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court; Crown v. Commissioner, 77 T.C. at 598. The year of worthlessness of a debt is to be fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope of recovery. Crown v. Commissioner, 77 T.C. at 598. Respondent asserts that the identifiable events establishing worthlessness of *508 Diversified's debts to Mr. Lewis were the dismissal of Diversified's suit against Commodore in the Florida District Court and the affirmance of that dismissal by the Fifth Circuit, both of which occurred in 1980. We agree with respondent. Although Diversified ceased doing business in 1970 and was dissolved in 1971, Diversified retained valuable assets in the form of its causes of action against Commodore, which were being litigated in Virginia and Florida. The Virginia District Court's award of a judgment to Diversified in 1973 and Mr. Lewis's active role in pursuing the litigation in Florida and in appealing the dismissal of the suit in Florida to the Fifth Circuit show that these causes of action had a reasonable prospect of recovery. When the dismissal of the suits against Commodore were finally affirmed by the Fifth Circuit in 1980, Mr. Lewis had no reasonable prospect for recovering his debts from Diversified. [3] Accordingly, petitioners have failed to meet their burden of proving that Diversified's debts to Mr. Lewis did not become worthless in 1980. *509 Under section 166, bad debts are classified as either nonbusiness bad debts or business bad debts. Business bad debts are deductible in full within the taxable year they become worthless. Nonbusiness bad debts are also deductible within the taxable year they become worthless but are treated as short-term capital losses subject to the capital loss limitations of section 1211(b). Sec. 166(d). Under section 166(d)(2), a debt is a nonbusiness debt unless it was created or acquired in connection with a trade or business of the taxpayer or became worthless in a trade or business of the taxpayer. In order to prove that the debts from Diversified to Mr. Lewis were business debts, petitioners must show a proximate relationship between the debt and a trade or business engaged in by Mr. Lewis. Whipple v. Commissioner, 373 U.S. 193, 201 (1963); sec. 1.166-5(b), Income Tax Regs. Petitioners do not contend that Mr. Lewis was in a separate trade or business of *510 guaranteeing notes or of making loans. The record reflects that Mr. Lewis was an investor in Diversified. The Supreme Court stated in Whipple v. Commissioner, 373 U.S. at 202, that "When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business * * *." When a taxpayer is both a shareholder and an employee of the debtor corporation, the test to be applied is whether the taxpayer's dominant motivation in guaranteeing the loan to the corporation was to protect his employment rather than his investment in the corporation. United States v. Generes, 405 U.S. 93, 101-105 (1972); Putoma Corp. v. Commissioner, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979). The parties stipulated that Mr. Lewis had served as secretary and treasurer of Diversified, but there is no evidence in the record that he was a paid employee of Diversified. The parties also stipulated that Nellie E. Lewis had served as president of Diversified, but the record indicates that she was not paid for her services as *511 president. Petitioners have not introduced evidence sufficient to show that Mr. Lewis's dominant motivation in guaranteeing the loans to Diversified was to protect his employment rather than his investment in Diversified. Accordingly, petitioners have failed to prove that the debts were business debts. Consequently, we hold that petitioners are entitled to a nonbusiness bad debt deduction of $ 22,350 in 1980 which is treated as a short-term capital loss under section 166(d). We have considered petitioners' other arguments and find them to be without merit. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Va. Code sec. 13.1-91↩ (Supp. 1971) provides that, after the involuntary dissolution of a corporation, the affairs of the corporation pass automatically to its directors as trustees in dissolution.
3. There is no evidence in the record which causes us to believe that there was a further prospect of recovery on the debts in 1981 as a result of Mr. Lewis's motion for reconsideration of the dismissal of the suit in the Florida District Court action.↩